Hayden Jasper WATTS, Petitioner,

v.

Lou V. BREWER, Warden, Respondent.

Civ. No. 11-323-C-2.

United States District Court,
S. D. Iowa, C. D.
April 3, 1972.

Robert Bartels, Iowa City, Iowa, for petitioner.

Richard C. Turner, Atty. Gen. of Iowa, Larry S. Seuferer, and Michael J. Laughlin, Asst. Attys. Gen., Des Moines, Iowa, for respondent.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

Hayden Jasper Watts, presently incarcerated in the Iowa State Penitentiary at Fort Madison, Iowa, seeks a writ of habeas corpus from this Court, predicated upon 28 U.S.C., Section 2254. He challenges on several Constitutional grounds his conviction in Iowa district court of "violation of parole," a felony found in Iowa Code Section 247.28.[1]

The facts in this case are not disputed: On or about March 21, 1968, Watts was committed to the Iowa State Penitentiary at Fort Madison, Iowa, as a result of his conviction for the crime of larceny. He was paroled from that institution by the Iowa Board of Parole on September 11, 1969. On September 28, 1969, Watts was arrested in Keokuk Township, Lee County, Iowa, for operation of a motor vehicle while under the influence of an alcoholic beverage (hereinafter referred to as "OMVUI"), an indictable misdemeanor. His trial on this charge was held on October 8, 1969. At this trial, without the assistance of

---

1. Section 247.28 of the Iowa Code reads:
   *Violation of board parole.* Whoever, while on parole, shall violate any condition of his parole, or any rule or regulation of the board granting the parole, shall be deemed guilty of a felony, and shall be punished by imprisonment in the institution from which he had been paroled, for a term of not more than five years, his sentence under such conviction to take effect upon the completion of his previous sentence.

counsel, Watts pleaded guilty to the charge of OMVUI. Watts was not informed by the trial judge of his right to have counsel appointed if he could not afford to hire an attorney. Furthermore, Watts' plea of guilty was accepted without any attempt on the part of the trial judge to ascertain whether Watts knew of his immediate and direct susceptibility to a conviction of "parole violation", a felony, on the basis of his OMVUI conviction.

On October 30, 1969, Watts was sentenced to pay a $300 fine and to be committed to the County Jail for a period of six months. The jail sentence was suspended and probation was granted under the supervision of the Lee County Sheriff. On November 11, 1969, Watts' parole was revoked and he was returned to the Iowa State Penitentiary.

On December 31, 1969, a County Attorney's Information was filed in Lee County, Iowa, District Court charging Watts with parole violation, a felony, predicated upon Iowa Code Section 247.28. The information alleged that he had violated the provisions of his board parole on the 1968 larceny conviction by reason of his conviction upon his plea of guilty to OMVUI.

The Information was amended on January 12, 1970, to charge Watts with further violation of his parole by being involved in two breaking and enterings in Lee County and by carrying and using a gun on the occasion, an incident allegedly occurring on October 26, 1969.

A jury trial on the charges commenced on January 15, 1970, at which the following evidence was introduced by the state:

1. The testimony of one Miss Lois Curtis that Watts had participated with her in a break-in while he was on parole. This testimony, although that of an accomplice, was not corroborated.

2. The record of Watts' guilty plea to and subsequent conviction of OMVUI, admitted over his strenuous objections that such admission would violate due process guarantees of the Fourteenth Amendment to the Constitution of the United States.

At the close of the case, the jury found Watts guilty of parole violation, and on February 13, 1970, he was sentenced to serve not more than five years in the Iowa State Penitentiary, such sentence to run consecutive to the sentence he was then serving.

On May 5, 1971, the Supreme Court of Iowa affirmed the lower court's decision. State v. Watts, 186 N.W.2d 611 (Iowa 1971). In that opinion, the Supreme Court rejected all of the arguments advanced by Watts in his present Petition to this Court.

I.

It has long been recognized that a plea of guilty to a criminal charge may constitutionally be accepted only if it is certain that that plea is being made voluntarily and with a full understanding of all of its consequences. "[C]ourts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 583, 71 L.Ed. 1009 (1927).

In McCarthy v. United States, 394 U. S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1968), the Supreme Court reaffirmed these requirements with regard to the taking of guilty pleas by reversing the appellant's conviction of income tax evasion because the judge who accepted the appellant's guilty plea failed (1) to address him personally and determine that the plea was "made voluntarily with understanding of the nature of the charge," and (2) to determine that there was "a factual basis for the plea." 394 U.S. at 462, 89 S.Ct. at 464. This ruling was made despite the appellant's statement before his plea that it was entered "of his 'own volition,'" and despite the appellant's trial counsel's assurances to the trial court that he had "advised

. . . [petitioner] of the consequences of a plea . . . " 394 U.S. at 461, 89 S.Ct. at 1168.

Although the *McCarthy* holding was based primarily on Rule 11 of the Federal Rules of Criminal Procedure, the Court's opinion did discuss at some length the intimate relationship between Rule 11 and the constitutional rights involved in a guilty plea:

"A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." 394 U.S. at 466, 89 S.Ct. at 1171.

Shortly after *McCarthy*, the Supreme Court made it clear, in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969), that a strict standard with regard to informing defendants of the consequences of their guilty pleas is of Constitutional dimension, and applicable to the state courts under the Fourteenth Amendment. In *Boykin*, the defendant pled guilty in state court to five counts of robbery; the record on appeal contained no information with regard to what inquiries were made by the arraigning judge to confirm that the plea was given knowingly and voluntarily. Despite the fact that the defendant was represented by counsel, the Supreme Court reversed his conviction "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty." 395 U.S. at 244, 89 S.Ct. at 1713.

Referring by way of foootnote to its language in *McCarthy, supra,* 395 U.S. at 243, n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274, the Supreme Court in *Boykin* placed heavy emphasis on the waiver of rights, including the Fifth-Fourteenth Amendment right against compulsory self-incrimination, involved in a guilty plea, and concluded that:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." 395 U.S. at 243–44, 89 S.Ct. at 1712.[2]

As set out above in the Introduction to this Memorandum, and as reflected in the trial record, the judge who accepted Watts' plea of guilty to OMVUI did not

---

2. In a number of cases following *McCarthy* and *Boykin, supra,* Federal Courts have reversed and remanded convictions based on guilty pleas because of failures to disclose fully the consequences thereof. In Paige v. United States, 443 F.2d 781 (4th Cir. 1971), the Court of Appeals for the Fourth Circuit held a plea of guilty invalid because the defendant was not informed that his conviction was for a second offense and hence would result in a greater punishment. In at least three other cases, Federal Courts of Appeal have held guilty pleas invalid because of a failure to disclose ineligibility for parole. Bye v. United States, 435 F.2d 177 (2d Cir. 1970) ; Harris v. United States, 426 F.2d 99 (6th Cir. 1970) ; Durant v. United States, 410 F.2d 689 (1st Cir. 1969). Finally, in Meadows v. United States, 420 F.2d 795 (9th Cir. 1969), and in United States v. Miller, 406 F.2d 1100 (4th Cir. 1969), courts have held invalid pleas of guilty to possession of an unregistered firearm because said pleas were entered before the Supreme Court had held in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), that an assertion of Fifth Amendment privilege was a bar to prosecution for that offense, and hence the pleas were not given with a full understanding of their consequences.

inform him that this plea would provide the basis for a prosecution for "violation of Parole"; nor did the judge make any effort to ascertain Watts was aware of this fact. This failure on the part of the trial judge was serious in at least two respects. First, since Watts did not have counsel, it was highly unlikely that he would be cognizant of the consequences of his plea of guilty to the OMVUI charge. Second, and more important, the "consequences" were extremely serious. Watts' plea of guilty to OMVUI was an admission that he had violated at least one of the conditions of his parole (that he obey the laws of the State of Iowa), and made him immediately susceptible to a successful prosecution for parole violation, since the prosecution had only to introduce that plea and evidence of Watts' parole status. And a conviction of parole violation is a far more serious matter than a conviction of OMVUI, as evidenced by the relative penalties imposed upon Watts for these offenses ($300 versus five years).

As the Iowa Supreme Court pointed out in State v. Watts, 186 N.W.2d 611, 617, the trial court that accepted Watts' guilty plea was well aware of Watts' parole status. There was thus no onus on the trial judge to speculate about the possible contingent consequences of Watts' plea: it clearly exposed Watts to a conviction for parole violation. There is nothing in the record to indicate that Watts was aware of this, however; and had he been aware of this consequence of his plea, it is highly doubtful he would have given it, as is strongly indicated by his subsequent resistance to its introduction at his "parole violation" trial. The trial judge therefore should have informed Watts of the parole-violation consequences of his plea, and his failure to do so rendered the admission of that plea in Watts' parole violation trial constitutionally impermissible.[3]

At this point, it is well to note that this Fifth-Fourteenth Amendment argu-ment was raised by Watts' attorney both at trial on the parole violation charge, and on appeal from conviction to the Iowa Supreme Court, but was rejected by both courts. State v. Watts, 186 N. W.2d 611, 616–18 (1971). Beyond the fact that under 28 U.S.C., Section 2254, this rejection is necessary to federal jurisdiction in this case, the Court feels it is important to examine the reasoning of the Iowa Supreme Court in State v. Watts because of the tender problem of state-federal relations inherent in this proceeding.

In rejecting Watts' argument with regard to the admissibility of his guilty plea, the *Watts* opinion relies in considerable measure on the opinion of this Court in Wessling v. Bennett, 290 F. Supp. 511, 517 (N.D.Ia.1968), aff'd, 410 F.2d 205 (8th Cir. 1969):

"in Wessling v. Bennett, 290 F.Supp. 511, 517, the district court for the Northern District of Iowa, Central Division, said:

'A state does not have to give notice in advance of trial on the primary charge of the intention to invoke a recidivist statute 'even where the former conviction is known.' Graham v. State of West Virginia, *supra*, 224 U. S. [616] at p. 629, 32 S.Ct. [583] at p. 588, [56 L.Ed. 917] . . . .' On appeal the case was affirmed, Wessling v. Bennett, 410 F.2d 205 (8 Cir.), the court holding defendant had no federal constitutional right to be informed of the habitual criminal charges prior to his conviction on the primary charge."

186 N.W.2d 611, 617.

However, reliance on *Wessling* in this case in response to a Fifth-Fourteenth Amendment challenge to the admission of a guilty plea is misplaced. The issue in Wessling was a defendant's Sixth Amendment right to be informed of the nature of the charges against him, not his Fifth Amendment rights to remain

---

3. The inadmissibility in a criminal proceeding of an invalid prior guilty plea was established in Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

silent and to be warned of the full consequences of a guilty plea. Indeed, there was no plea of guilty involved in *Wessling* at all.

The *Watts* opinion also dealt at some length with the case of State v. Sisco, 169 N.W.2d 542 (Iowa 1969). 186 N.W.2d at 617. In this regard, the *Watts* court noted its adoption of the ABA minimum standards for Criminal Justice, and in particular the standards with regard to the acceptance of guilty pleas. The *Watts* court paid particular attention to the comment of the ABA drafters with regard to Standard 1.4 ("Defendant to be Advised by Court"):

> "It must be emphasized that this provision does not require a warning to the defendant that his present conviction may be taken into account if, at a later date, he is convicted of other offenses and then dealt with as a repeater under multiple offender laws. Likewise, the judge is not required to speculate concerning the possible future application of the multiple offender laws of other jurisdictions because of the present conviction. Rather, this part of the standard applies only when it is possible, assuming past convictions, that the conviction following defendant's present plea could result in the prompt imposition of additional punishment by this jurisdiction . . . ."

186 N.W.2d at 617.

■ Of course, this Court is in no way bound by these comments of the ABA committee. But the above quotation shows that committee's quite proper concern that trial courts should not be required to inform defendants of all the possible contingencies that might occur after their guilty pleas, particularly when those contingencies concern future actions of the defendant about which the courts can only speculate. In other words, a defendant is to be informed of the full consequences of his plea, but not necessarily the full consequences of all his future actions. But in this case, there was nothing to speculate about:

as the Iowa Supreme Court noted, 186 N.W.2d at 617–618, the fact that Watts was on parole "was a matter of discussion between the court, defendant and the prosecuting attorney." Thus, the trial court was well aware that Watts' plea could be used as a basis for a charge of parole violation, but failed to advise him of this. There was no need for the trial court to speculate about future actions of Watts; on the basis of the discussions of Watts' parole status, the trial court knew that the plea of guilty to OMVUI was tantamount to a plea of guilty to parole violation, and the judge's failure to inform Watts of this, particularly when Watts was unassisted by counsel, rendered the plea of guilty constitutionally inadmissible in Watts' subsequent trial for parole violation.

II.

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), holds that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). This standard applies in habeas corpus actions under 28 U.S.C., Section 2254. Cannito v. Sigler, 449 F.2d 542 (8th Cir. 1971).

■ At Watts' January 20, 1970 trial, the State introduced two lines of evidence to support the charge of "parole violation": (1) the OMVUI conviction, the admission of which this Court holds was in violation of the federal constitution; and, (2) the uncorroborated testimony of an accomplice that Watts had, while on parole, been involved in two breaking and enterings and had carried a gun on these occasions. Iowa Code, Section 782.5 reads:

> A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient

if it merely show the commission of the offense or the circumstances thereof.

Quite clearly, the admission of the OMVUI conviction was prejudicial beyond all doubt in these circumstances. *Chapman,* supra; *Harrington,* supra; *Cannito,* supra. In light of the discussion above, the Court need not reach Watts' other grounds for relief.

Accordingly, it is ordered, with respect to the January 16, 1970 conviction of Hayden Jasper Watts for violation of Iowa Code Section 247.28, that the writ of habeas corpus ad subjiciendum be, and hereby is, issued effective ten days from the date of this Order, unless the State of Iowa chooses to prosecute Watts for the same crime prior to the termination of the ten day period.

It is further ordered that in the event the State of Iowa does not initiate and carry forward in a good faith manner the prosecution of Hayden Jasper Watts for the crime charged in the Lee County Attorney's Information dated December 31, 1969, and amended January 12, 1970, within ten days from the date of this Order, Watts must be ordered discharged.