STATE of Iowa, Appellee,

v.

Gehrig Leroy DALGLIESH and Robert E. Marine, Appellants.

No. 56379.

Supreme Court of Iowa.

Nov. 13, 1974.

Donald E. O'Brien, of O'Brien, Galvin & O'Brien, Sioux City, for appellants.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., Zigmund Chwirka, County Atty., Edward F. O'Brien, and Bernard A. Brown, Asst. County Attys., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES, and HARRIS, JJ.

HARRIS, Justice.

This appeal from convictions of breaking and enterng presents questions on a jury instruction, two motions for mistrial and a claim the trial court abused its discretion in imposing of sentence. We affirm.

Defendants were charged by county attorney's informations with breaking and entering in violation of § 708.8, The Code. Upon their pleas of not guilty they stood trial before a jury which returned verdicts of guilty against both defendants.

Willie Earl Rucker testified defendants, during the evening of November 28, 1972, came to a bar where he was employed and told him someone had stolen his tape deck. Defendants told Rucker the property had been taken by "three white guys." Rucker left work with them and upon entering their car saw the tape deck and tapes which defendants then turned over to him.

When the three arrived at Rucker's apartment David Mims, who lived in a nearby apartment, told Rucker he had seen defendants break into his apartment. Mims was acquainted with one defendant and was able to identify him at the time and both defendants at trial. Police were called and defendants arrested.

At trial defendants testified they had seen three men leaving Rucker's apartment house and tried unsuccessfully to stop them. They said the three dropped the tapes and tape deck which defendants picked up. They said they then went to Rucker's apartment, found it had been broken into and went to find Rucker. According to defendants Mims saw them while they were discovering the apartment had been broken into.

Defendants' two motions for mistrial were overruled. They separately assign these rulings as grounds for reversal. We think both rulings were right.

I. During voir dire a prospective juror stated she did not know defendant Dalgliesh personally but had heard about him through her daughter and therefore did not think she could serve as a juror in the case. The record is unclear but defendants make no claim this prospective juror was selected to serve. Defendants' claim the remark made in the presence of the jury panel was so prejudicial as to deny a fair trial.

■■■■ Trial courts have considerable discretion in granting or denying motions for mistrial. State v. Houston, 209 N.W.2d 42, 44 (Iowa 1973). Such latitude of discretion would seem appropriate in view of a trial court's ability to gauge the impact of the subject of the motion upon the trial. The controlling question is whether prejudice is shown. State v. Carey, 165 N.W.2d 27, 29 (Iowa 1969). Since no prejudice was shown in the remark of the prospective juror, the motion for mistrial was properly overruled.

■■■■ If the remark could be imagined to have been derogatory of one defendant the ruling was still proper on this record. It amounts to a challenge to the entire panel. Such a challenge must in writing allege material departure from statutory requirements for drawing or returning the jury. Rule 187(d), Rules of Civil Procedure. We recently reviewed the effect of rule 187(d) in State v. Staker, 220 N.W.2d 613, 615–616 (Iowa 1974). In Staker at 616 appears the following:

"Ordinarily, disqualification of individual jurors for expressions of opinions or for making remarks during selection of the jury indicating in some manner possible prejudice or bias against the accused or the occurrence of circumstances during that procedure from which such bias or prejudice might be implied does not constitute a sufficient ground for a challenge of the entire panel. (Authority)."

II. Defendants' second motion for mistrial resulted from an occurrence in the halls outside the courtroom during a recess. David Mims, after testifying, approached defendant Marine and his wife. After engaging them in conversation within a few feet of several of the jurors he said: "It sure would have been a lot easier if you had put the stuff back like I told you."

Defense counsel immediately moved for mistrial in a hearing held outside the presence of the jury. Mrs. Marine testified of Mims' comments. The State concedes defendants showed the remark was made but point out there was no showing any jurors heard it. This motion for a mistrial was also denied.

■ We think the trial court did not abuse its discretion in overruling the motion. Again no prejudice was shown. Even if we assume the remark was overheard by members of the jury it was in no way inconsistent with Mims' testimony on the stand. Defendants feel spontaneity of the remark in the halls may have made it more impressionable on the jurors' minds than Mims' sworn testimony. The State believes it was less so. We hold a proper resolution of the dispute was in the sound discretion of the trial court. State v. Houston, supra. That discretion was not abused in overruling the motion.

III. Defendants' most serious assignment challenges a jury instruction on an inference to be drawn by reason of possession of the tapes and tape deck. The trial court instructed:

"If you find from the evidence beyond a reasonable doubt that (1) the property claimed by the State to have been stolen was stolen; (2) Defendants thereafter had possession of the property; and (3) Defendants' possession was recent, then you may, but are not required to, infer that Defendants stole it.

"The inference of theft may be rebutted.

"What is recent possession cannot be precisely defined."

On appeal defendants argue the instruction was improper for its failure to inform the jury the inference could arise only if possession of recently stolen goods was *unexplained.* It is clear defendants argue a correct statement of law. In State v. Houston, 211 N.W.2d 598, 600 (Iowa 1973) we said:

"While a few jurisdictions hold otherwise, the rule which is generally followed and appears the better one to us is that *unexplained* possession by the accused of recently stolen property justifies an inference that he illegally received it. (Authorities). Such an inference comports with due process of law. (Authority). The term 'recently' is a relative one. (Authority). * *." (Emphasis added).

We agree with defendants' contention the inference arises only where possession is unexplained. But we fail to find defendants suggested the same deficiency in the instruction at trial. At trial defendants' objections were to the giving of any instruction on the inference. The trial record discloses the instruction now complained of was mentioned twice. The first record was made before instructions were in final form and before such an instruction was included:

"MR. GALVIN (defendants' counsel): The Defendants have no objections to the proposed instructions as earlier submitted. However, if, in the final draft of the instructions, there is included, as the Court has indicated there will be, an instruction relative to the presumptions that arise from possession of recently stolen articles, it will be objected to for the reason that it is the Defendants' contention that that instruction has applicability in situations wherein the recently stolen and taken property is discovered in the possession of the Defendants, or Defendant, by the complainant, or by some law enforcement people, and that that instruction would not have application to the uncontroverted facts in this case wherein the purportedly stolen property was exhibited to the owner thereof by the

Defendants with a report by them that they had observed the apparent taking of that personal property, and that, as a matter of uncontroverted fact, there is thus in the record an explanation by the Defendants of the reason for their being in possession of that property.

"THE COURT: All right, the Court, at least at this time, concludes it will give the instruction."

The record on defendants' objection to the proposed instruction was as follows:

"THE COURT: Mr. Galvin, do the Defendants wish to make any exceptions or objections to the instructions?

"MR. GALVIN: Yes, Your Honor. The Defendants, and each of them, respectfully object to the inclusion of Instruction No. 8, and move that it be deleted in its entirety. And in case there might be any misnumbering, and I am not suggesting there is, so that the record is clear to the instruction concerning which the Defendants now object, it is the instruction with reference to which it is instructed that adverse problems arise from the Defendants' possession of recently stolen property.

"THE COURT: The objections and motions are overruled."

After the jury returned its verdict of guilty against defendants a motion in arrest of judgment was filed in which in part it was urged in behalf of defendants: "2. That the Court erred in instructing the jury that the possession of recently stolen property generated a presumption of wrongful taking and thus put a burden on the Defendants to explain their possession thereof."

We recently outlined the requirements for preservation of error as to instructions in State v. Baskin, 220 N.W.2d 882 (Iowa 1974). After holding the objections must be made to instructions in final form we explained the basis for the requirements in *Baskin* at page 886 as follows:

"In one way or another this court has frequently said an objection to an instruc-

tion given to a jury should reveal to the trial judge the purported defect to which the objecting party makes complaint and may wish to make the subject matter of attack upon appeal. The objection should be as specific and as penetrating as the stress of the trial permits. The purpose of requiring clarity of objections is not to gratify any possible whim of the trial judge, but to afford the trial judge an opportunity to catch exactly what is in counsel's mind and thereby determine whether the objection possesses merit to an extent the instruction should be recast. In short, a party, upon objecting, must make known to the trial judge the specific objection which he may wish to urge upon appeal. If his objection then taken possesses merit and induces the trial judge to recast his words, a subsequent appeal is avoided. But if he does not disclose what is then in his mind, a needless appeal may be the ultimate result."

■ We are aware defendants at trial argued the instruction should not be given for reasons which somewhat parallel their present criticism of the instruction as given. That is, their position at trial was that there was a logical and innocent explanation for defendants' possession of the goods. But we do not believe this similarity was in any way sufficient to alert the trial court to any criticism of the form or wording of the instruction. There is every reason to believe the trial court would have willingly acceded to a request to word the instruction as defendants now suggest. No error on the instruction was preserved.

IV. Defendants' final assignment challenges as excessive and harsh the imposition of sentence. Defendants were sentenced to indeterminate terms of not to exceed ten years which they argue is out of proportion to their offense. They point out the offense was against property only and that Rucker was not long denied the use of it. They point especially to the fact defendants promptly looked up Rucker and surrendered the goods.

■ Defendants were sentenced for violating § 708.8, The Code, which provides that upon conviction a defendant shall " * * * be imprisoned in the penitentiary not more than ten years, or be fined not exceeding one hundred dollars and imprisoned in the county jail not more than one year."

Our cases are legion which hold, when judgment is within the maximum allowed by statute, we will not interfere unless it is shown there has been an abuse of the trial court's discretion. See State v. Jennings, 219 N.W.2d 1 (Iowa 1974) and authorities.

We find no abuse of discretion. Defendant Dalgliesh admitted being convicted of a prior felony. The trial court had and made use of a presentence investigation report and apparently believed defendants were motivated to return the goods by reason of being seen by Mims rather than by good intentions or their consciences.

Affirmed.