**STATE of Iowa, Appellee,**

v.

**Wayne Lee WARNER, Appellant.**

**No. 57427.**

Supreme Court of Iowa.

May 21, 1975.

granted and defendant personally tendered a plea of guilty to the offense charged in the information.

Before accepting the plea the court proceeded to question defendant personally for the purpose of determining if defendant's plea was a voluntary and intelligent plea such as would provide the basis for conviction and support a judgment and sentence and for the purpose of satisfying it that there was a factual basis for such plea, following the guidelines set forth in State v. Sisco, 169 N.W.2d 542, 547–549 (Iowa 1969). The case was continued for sentencing until a presentence investigation requested by the court had been made available. April 26 defendant was sentenced to the Men's Reformatory for not to exceed five years.

Defendant appeals from the judgment imposing sentence challenging the voluntariness of the plea as well as the trial court's imposition of the maximum sentence.

I. Defendant insists the trial court's failure to inquire of the prosecutor or the defense lawyer as to the existence or nonexistence of a plea agreement requires a reversal.

After explaining in detail the charge to defendant the court proceeded:

"THE COURT: When you enter a plea of guilty you waive your right to a jury trial and you relieve the State of their burden of proving you guilty at that jury trial beyond a reasonable doubt of this particular offense, Attempting to Break and Enter. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: You waive your right to cross-examine the witnesses who would testify as to the facts that I have just read to you.

"THE DEFENDANT: Yes.

"THE COURT: And you do understand that there is a jury now in another courtroom ready to try your case if that's your desire?

Carl W. Schultz, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Edward N. Wehr, County Atty., for appellee.

MASON, Justice.

November 5, 1973, a county attorney's information was filed in the Scott district court charging Wayne Lee Warner with attempting to break and enter a storage and transfer company in which goods, merchandise and valuable things were kept for use, sale or deposit with intent to commit a public offense, to wit: larceny, in violation of section 708.10, The Code.

In all proceedings in the trial court defendant was represented by the same counsel. November 20, following arraignment, defendant entered a plea of not guilty. March 27, 1974, defendant's motion for leave to withdraw his plea of not guilty was

"THE DEFENDANT: Yes.

"THE COURT: Now the penalty involved in this offense could be five years in the penitentiary or a three hundred dollar fine and one year in the county jail. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Have any threats or promises been made to you in regard to making your plea at this time?

"THE DEFENDANT: No.

"THE COURT: Now, I am aware there is another charge of possession of burglary tools against you. You are aware of that as well, is that right?

"THE DEFENDANT: Yes.

"THE COURT: Have any promises been made to you in regard to what would be the disposition of that other case?

"THE DEFENDANT: No.

"THE COURT: No? You do understand that what sentence is imposed in this case is up to the Judge? Whatever Mr. Kelly [defendant's counsel] may have told you his idea would be of the sentence or, in fact, what the County Attorney may have told you as to how he felt about sentencing it is really up to the Court to decide based upon a presentence investigation. You understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, Mr. Warner, bearing in mind what I have told you and also bearing in mind that I don't want you to enter a plea of guilty to this charge if in fact you believe you are not guilty to the charge, how do you plead to a violation of Section 708.10, Attempted Breaking and Entering, guilty or not guilty?

"THE DEFENDANT: Guilty."

As stated, defendant's attack on the voluntariness of his guilty plea is predicated on the trial court's failure to inquire of the prosecuting attorney and of the defense counsel whether defendant's tendered plea of guilty was the result of prior plea discus-

sion and a plea agreement, and, if it was, what agreement had been reached. In *Sisco* this court adopted certain specified Minimum Standards of the American Bar Association for Criminal Justice, Pleas of Guilty. Among those adopted was standard 1.5 which provides:

"1.5 Determining voluntariness of plea.

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea."

In Brainard v. State, 222 N.W.2d 711, 721–723 (Iowa 1974), this court detailed some recommended procedures for conducting a guilty plea proceeding. The outline of areas of appropriate inquiry in such proceeding included questions to be asked the prosecuting attorney and defense counsel: "(1) if the plea is a result of prior plea discussions and a plea agreement; (2) if it is, what agreement has been reached." The opinion also suggests that in making inquiry of defendant he be asked: "(1) if any threats or promises have been made to induce him to plead guilty; (2) if he believes there is any understanding or if any predictions have been made to him concerning the sentence he will receive (advise him the court is not bound by such understanding or predictions)."

It must be conceded the court made no inquiries of the prosecutor or of defense counsel at either the plea stage or the sentencing stage as to the possible existence of

any previous plea bargaining. A somewhat similar contention to that made here was unsuccessfully urged as a basis for reversal in State v. Zacek, 190 N.W.2d 415, 416–417 (Iowa 1971); State v. Reppert, 215 N.W.2d 302, 308 (Iowa 1974); and State v. Hansen, 221 N.W.2d 274, 277 (Iowa 1974), which are cited by the parties. However, in *Zacek* defendant did not at any point maintain there was any agreement to seek sentence concessions which required court approval. In *Reppert* defendant did not contend there was any evidence or indication his tendered plea was a result of improper plea bargaining. The contention was first made in an affidavit filed more than two years after pronouncement of sentence. In *Hansen* defendant asserted his guilty plea "might have been induced by promises or coercion." The contention was first urged five months after pronouncement of sentence. However, Hansen did not raise the issue of the trial court's failure to determine by inquiry of the county attorney and defense counsel whether the tendered plea was a result of prior plea discussions.

Some three months after the hearing and two months after sentencing Warner filed an affidavit in which he asserted his attorney had in fact promised a two year "parole" in return for a plea of guilty. This contention is not urged in defendant's opening brief but is referred to for the first time in his reply brief filed January 7, 1975.

The commentary to standard 1.5 of the Approved Draft, 1968, of the Standards Relating to Pleas of Guilty, tells us, "Such inquiry will disclose whether there is reason for the court to caution the defendant of the court's independence from the prosecutor. * * * This caution will prevent the defendant from being able to challenge his plea later on the ground that he thought the court's awareness of the promises made at the time the plea was received meant that they were then and there accepted by the court."

■ Even though the court did not inquire of the prosecutor and of defense counsel as to the existence of any previous plea bargaining, the purpose of the inquiry mandated by this standard was accomplished, in our opinion, during the following portion of the colloquy between the court and defendant, which we repeat:

"THE COURT: Have any threats or promises been made to you in regard to making your plea at this time?

"THE DEFENDANT: No.

"THE COURT: Now, I am aware there is another charge of possession of burglary tools against you. You are aware of that as well, is that right?

"THE DEFENDANT: Yes.

"THE COURT: Have any promises been made to you in regard to what would be the disposition of that other case?

"THE DEFENDANT: No.

"THE COURT: No? You do understand that what sentence is imposed in this case is up to the Judge? Whatever Mr. Kelly [defendant's counsel] may have told you his idea would be of the sentence or, in fact, what the County Attorney may have told you as to how he felt about sentencing it is really up to the Court to decide based upon a presentence investigation. You understand that?

"THE DEFENDANT: Yes."

The foregoing exchange between the court and defendant served to inform defendant the court was not under any obligation to accept any recommendation or bargain reached by the parties and that the sentence which would be imposed following defendant's conviction as a result of his guilty plea would be one determined by the court after consideration of a presentence investigation.

Although we conclude the court's failure in the respect asserted by defendant does not justify a reversal under this record we point out that closer adherence to the plain, clear and specific guidelines set forth in the standards adopted in *Sisco*, would in all probability have avoided the necessity of this appeal.

When we said in *Sisco,* 169 N.W.2d at 548, that the adoption of the specified standards did not require that any ritualistic or rigid formula be fixed or followed, this court did not intend to convey the idea the purposes of the standards were to be diluted by merely partial compliance with the mandates of those standards. In State v. Clayton, 217 N.W.2d 685, 686 (Iowa 1974), we pointed out that the more meticulously the standards are adhered to, the more it tends to discourage, or at least to enable more expeditious dispositions of, the numerous and often frivolous postconviction attacks on the constitutional validity of guilty pleas.

*Brainard,* 222 N.W.2d at 713–714, which had not been filed at the time of the imposition of the sentence in the case before us, emphasizes this position.

In this regard we call attention to the fact several of the federal circuit courts have initiated definite "prophylactic" procedures for courts to follow under rule 11, Federal Rules of Criminal Procedure, in determining whether promises have been made and agreements reached. These procedures are to prevent future appeals.

The Third Circuit has promulgated the following rule:

"We believe that it is appropriate at this time for the district courts of this circuit to take similar prophylactic measures to cope with this problem. In connection with their rule 11 inquiry on a plea of guilty, district judges should in essence inform the defendant that plea bargaining is specifically approved by the court and that he may truthfully inform the court of any plea negotiations 'without the slightest fear of incurring disapproval of the court.' Inquiry should also be made of counsel for the parties as to any plea negotiations. Should inquiry reveal the presence of plea negotiations, counsel for the parties should be required to state plainly the terms of record and defendant should state of record whether he understands them and concurs. The court, of course, is not obligated to accept any recommendation or bargain reached by the parties, and it should so inform the defendant when any bargain is disclosed. Compliance with this procedure should avoid ostensible claims by defendants of unfairness in the guilty plea process and minimize the escalating number of cases complaining of aborted plea bargains, involuntary pleas, or frustrated plea expectations." Paradiso v. United States, 482 F.2d 409, 413 (3 Cir. 1973).

The Fifth Circuit has established basically the same rule in the following language:

"Thirty days after the date of this opinion all district courts in this circuit shall put into effect the following supplementary practices at the time of taking pleas of guilty or nolo contendere. The court shall state that plea agreements are permissible and that the defendant and all counsel have a duty to disclose the existence and details of any agreement which relates to the plea tendered. Specific inquiry shall be made as to the existence of such an agreement before a plea is accepted. The defendant shall be placed under oath." Bryan v. United States, 492 F.2d 775, 781 (5 Cir. 1974).

Finally, the Fourth and Seventh Circuits have instituted virtually identical rules. "In order to forestall unnecessary appeals district judges in this circuit should immediately expand their Rule 11 inquiry substantially as follows:

"I now inquire of the United States Attorney and of the prisoner and his counsel whether or not there have been plea negotiations. Before permitting you to respond, I advise you that the United States Supreme Court has specifically approved plea bargaining and has said it is 'an essential component of the administration of justice * * * to be encouraged.' You should advise me truthfully and fully of any plea negotiation without the slightest fear of incurring disapproval of the court." Moody v. United States, 497 F.2d 359, 365 (7 Cir. 1974); and Walters v. Harris, 460 F.2d 988, 993 (4 Cir. 1972), cert. den., Wren v. United

States, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262.

Thus, the Third, Fourth, Fifth and Seventh Circuits have instituted rules requiring inquiry of the defendant and involved attorneys. And, the requirement is not unreasonable. The following language is relevant:

" * * * Examination of the defendant alone will not always bring out into the open a promise that has induced his guilty plea. It is well known that a defendant will sometimes deny the existence of a bargain that has in fact occurred, * * * [citing authority] out of fear that a truthful response would jeopardize the bargain.

" * * *

" * * * The danger that a Rule 11 inquiry will not uncover a plea bargain is sufficient that the defendant's responses alone to a general Rule 11 inquiry cannot be considered conclusive evidence that no bargaining has occurred." Walters v. Harris, supra, 460 F.2d at 993 and authorities cited.

The foregoing pronouncements should leave little doubt in the minds of trial courts as to the necessity of meaningful compliance with standard 1.5 as adopted in *Sisco*.

III. In support of his contention the court's failure to substantially and meaningfully comply with the *Sisco* standards requires a reversal, defendant insists the trial court erred when it fell into the habit of creating a record showing defendant reiterating "yes" answers to the leading and suggestive questions by the judge. Although it would have been preferable for the court to ask defendant himself to tell what he did as suggested in Ryan v. Iowa State Penitentiary, 218 N.W.2d 616, 618 (Iowa 1974), the exchange between the court and defendant was sufficient to satisfy the requirement there be a factual basis for the guilty plea. See State v. Hansen, 221 N.W.2d at 276.

We find no merit in this contention.

IV. Defendant's final argument involving his contention the court's failure to comply with the *Sisco* standards requires reversal concerns the companion charge of possession of burglary tools (section 708.7, The Code). It is contended the trial court should have informed defendant the maximum penalty for that crime is fifteen years, "and that by pleading guilty in the instant case an otherwise difficult-to-prove element in the other case was facilitated."

Of course, the trial court did inform defendant of the maximum penalty for attempted breaking and entering. No mention, however, was made of the penalties for possession of burglary tools, of what the "consequences" of a plea of guilty to the crime charged would have on any prosecution for possession.

The question is whether defendant's plea was rendered involuntary by this failure on the part of trial court. Defendant cites no authority relied upon in support of this contention.

Defendant's contention is based on the provisions of standard 1.4, particularly subparagraph (c)(iii), which is set out in full in *Sisco*.

The commentary to this standard has this statement:

"It must be emphasized that this provision does *not* require a warning to the defendant that his present conviction may be taken into account if, at a later date, he is convicted of other offenses and then dealt with as a repeater under multiple offender laws. Likewise, the judge is not required to speculate concerning the possible future application of the multiple offender laws of other jurisdictions because of the present conviction. Rather, this part of the standard applies only when it is possible, assuming past convictions, that the conviction following defendant's present plea could result in the prompt imposition of additional punishment by this jurisdiction. The standard applies whether this additional punishment would result by virtue of a separate charge under a multiple offender law or by virtue

of a special penalty provision applicable to the offense now charged." (Emphasis in the original).

The foregoing comment was quoted with approval in State v. Watts, 186 N.W.2d 611, 617 (Iowa 1971), where this court held defendant's constitutional rights against self-incrimination had not been violated by the court's failure to advise him his conviction upon a plea of guilty to a charge of operating a motor vehicle while under the influence of intoxicating liquor, an indictable misdemeanor, could be used as a basis for charging him with violating his parole granted on an earlier larceny conviction.

The federal district court for the southern district of Iowa in Watts v. Brewer, 340 F.Supp. 378, disagreed with our holding in *Watts* in part, at least, on the fact Watts did not have the assistance of counsel at the time he tendered his guilty plea to the misdemeanor charge in state court.

Tindall v. United States, 469 F.2d 92 (5 Cir. 1972), decided after Watts v. Brewer, states:

"Rule 11, F.R.Crim.P., requires the trial judge, before accepting a guilty plea, to advise the defendant of the maximum sentence possible. However, there is 'no requirement to advise a defendant of every "but for" consequence which follows from a plea of guilty.' * * * [citing authorities]."

Along this same line is this pronouncement in Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1365–1366 (4 Cir. 1973), cert. den., 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241:

"The law is clear that a valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea.' * * * [citing authority]. By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all 'possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea

of guilty, * * *.' * * * [citing authorities].

"The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."

■ A prosecution for possession of burglary tools is not a "definite, immediate and largely automatic effect" arising from defendant's plea of guilty to the crime of attempted breaking and entering. Neither crime is "the basis" of the other. Significant also is the fact defendant had the advice of counsel.

Defendant's contention in this regard is also without merit.

V. The trial court denied probation and sentenced defendant to a term not to exceed five years at the Men's Reformatory in Anamosa. A presentence report was relied upon in this regard which apparently outlined defendant's "poor previous criminal activity record" and "poor behavioral record." Furthermore, the court considered defendant's refusal to acknowledge he had anything to do with the crime and told defendant it was "just unrealistic to believe that with that attitude you are going to stay in this community and commence any type of rehabilitation whatsoever."

Defendant maintains "the trial court abused its discretion in imposing the maximum sentence and in refusing probation, in that the record reveals no evidence to support one major element of the trial court's rationale, and a probable error of interpretation as to a second major element in the rationale."

When faced with challenges concerning a criminal sentence, this court has utilized the following basic principles to resolve such problems:

"It is our duty to carefully consider whether the punishment is too severe. Code section 793.18. We have, however,

consistently held that where the judgment does not exceed the statutory maximum, we will interfere only where an abuse of the trial court's discretion is shown. * * * [citing authorities]." State v. Carncross, 205 N.W.2d 698, 698–699 (Iowa 1973). See also State v. Banks, 213 N.W.2d 483, 486–487 (Iowa 1973); State v. Stakenburg, 215 N.W.2d 265, 266–267 (Iowa 1974); State v. Dalgliesh, 223 N.W.2d 627, 631 (Iowa 1974); State v. Drake, 224 N.W.2d 476, 479 (Iowa 1974).

"The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual. 24B C.J.S. Criminal Law § 1980." State v. Cupples, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280. See also State v. Stakenburg, 215 N.W.2d at 267.

"[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed * * * may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." State v. Delano, 161 N.W.2d 66, 69 (Iowa 1968).

Thus, the trial court made use of a presentence report which, as stated above, has not been shown to be erroneous. Clearly, defendant must show an abuse of discretion on the part of the trial court or, in other words, that use of the report was an abuse of discretion.

" * * * The exercise of a lower court's discretion is not reviewable; it is only the alleged abuse of that power which is reviewable on appeal. * * * [citing authority]. Generally, abuse of discretion will be found only where there is no support for the decision in the hearing evidence. * * * [citing authorities]." Rath v. Sholty, 199 N.W.2d 333, 336 (Iowa 1972).

" * * * '[A]buse of discretion' means no discretion to do what was done." Wilkes v. Iowa State Highway Commission, 186 N.W.2d 604, 607 (Iowa 1971).

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * . * [citing authority]." Wendel v. Swanberg, 384 Mich. 468, 185 N.W.2d 348, 351.

■ We find no abuse of the trial court's discretion.

The case is therefore

Affirmed.

All Justices concur except LeGRAND, J., who concurs specially joined by MOORE, C. J., REES and UHLENHOPP, JJ.

LeGRAND, Justice (special concurrence).

I concur in the result but disagree with much of what is said in reaching that conclusion.

I believe the inquiry conducted by the trial court fully and fairly met the principles established by both State v. Sisco, 169 N.W.2d 542 (Iowa 1969) and Brainard v. State, 222 N.W.2d 711 (Iowa 1974). I cannot agree with the majority's reluctance to accept this and the strong suggestion the trial court should have done better.

In *Sisco*, we decried the use of any "ritualistic" procedure and said there need only be "meaningful" compliance with the rules announced there. In *Brainard*, we provided a question-by-question formula for trial courts as a "recommendation." Yet the

majority here, just as it did in Ryan v. Iowa State Penitentiary, 218 N.W.2d 616 (Iowa 1974), encourages the very stereotype procedure which we disavowed in *Sisco* and *Brainard*. I feel obliged to protest this approach for the same reason I dissented in *Ryan* and joined Justice Rees' dissent in *Brainard*.

I have reviewed the record and cannot find any real difference between what the trial judge asked this defendant and what the majority says he should have asked him. Answers to the judge's questions would have disclosed plea bargaining, if there had been any, just as surely as if the words plea bargaining had been used in framing those questions.

Neither do I think we should any longer pursue the illusory notion that the more we tighten plea requirements, the fewer frivolous appeals we will entertain. Experience teaches the opposite is true.

The present appeal is a perfect example of this. Defendant now insists his attorney promised him a parole in return for a guilty plea. Yet at the time his plea was entered, he said no promises had been made to induce his plea. He is now saying he wasn't truthful then. How would this have changed if the trial court had used the magic words "plea bargaining"? His answer at that time still would have been no, and his claim now still would have been yes. I believe the procedure followed by the trial court was entirely proper and adequate.

MOORE, C. J., and REES and UHLEN-HOPP, JJ., join this special concurrence.