**STATE of Iowa, Appellee,**

v.

**Gary Lee MORELOCK, Appellant.**

**No. 56940.**

Supreme Court of Iowa.

May 21, 1975.

Raymond Rosenberg, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen. and Ray Fenton, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

RAWLINGS, Justice.

Defendant, Gary Lee Morelock, appeals from judgment on jury verdict finding him

guilty of second degree murder. We affirm.

The fatal shooting of defendant's wife occurred July 11, 1973, at the Morelock home in Des Moines.

Since William J. Elbert was apparently a central figure in this tragedy it is appropriate to prefatorily note his association with the Morelocks. At time of the incident here involved Elbert had been Director of Community Services in the Des Moines area for about three years. He previously served as a parole supervisor. While conducting a pre-sentence investigation of defendant in connection with a 1968 felony conviction Elbert became acquainted with Mr. and Mrs. Morelock.

Subsequently, defendant continued to consult Elbert regarding the former's drug addiction and employment-related problems. As a result of this contact Elbert had counseled the Morelocks in their home on at least two occasions prior to the instantly involved event.

At this point defendant's testimony comes into play. Prior to July 11, 1973, Morelock was employed as a traveling salesman. He was at home the preceding Monday night. Tuesday morning, after advising his wife he would return Wednesday evening, defendant started on a sales trip. Being unable to locate his contact lens after completing work on Tuesday, Morelock decided to return home and arrived there about midnight. Finding the front door locked he went to the rear of the premises and there saw Mrs. Morelock (Delores) emerging from a fenced-in swimming pool. Defendant testified Delores was naked except for a bathrobe she was then putting on. After a brief conversation regarding Mrs. Morelock's lack of attire the two proceeded into the house. At that point defendant decided to investigate. He returned to the pool site and there discovered Elbert totally disrobed. The two men exchanged words and Morelock re-entered the house to get a gun. In the meantime Elbert dressed and ran to his car, then located

across the street. Upon observing Elbert running toward the parked vehicle Morelock opened his front door and the weapon he had procured then discharged. Upon arriving at the car Morelock loudly advised Elbert to get out of there and never come back again. Following Elbert's departure defendant rejoined Delores in the driveway where they discussed the preceding incident and some of their domestic difficulties. Finally Delores suggested defendant put the gun away. His testimony is to the effect he decided to do so but encountered difficulty in removing the gun clip and the weapon accidentally discharged. As a result Delores was fatally injured.

Elbert, a defense-called witness, testimonially stated he went to the Morelock residence about 10:30 Tuesday night in response to a phone call from Delores seeking his advice as to personal problems the Morelocks were encountering. Elbert denied having at any time removed his clothing while visiting with Delores.

In support of a reversal defendant contends trial court erred in overruling (1) his request for leave to examine a typewritten statement made by Elbert after the county attorney had used same in cross-examination of said witness, and (2) his objection to an instruction on impeachment.

I. During redirect examination of Elbert, defense counsel requested production by the prosecutor of a statement allegedly given by said witness to the county attorney which had been used by the latter while cross-examining Elbert. After extending colloquy between trial judge and both attorneys, absent any in-camera proceeding, the aforesaid request was overruled. As noted above, defendant here asserts such ruling constitutes cause for reversal.

On submission of this appeal we therefore remanded the case to trial court for an in-camera hearing as to the aforesaid excluded document. See State v. Fryer, 226 N.W.2d 36, 39 (Iowa 1975); State v. Mayhew, 170 N.W.2d 608, 613–615 (Iowa 1969).

Hearing was accordingly held and the controverted statement was produced. Prior thereto the instrument had been delivered to defense counsel for examination and has since been certified to this court.

At close of the aforesaid hearing trial court aptly concluded the questioned paper would have been neither useful to defense counsel for purpose of impeachment nor otherwise helpful to defendant.

■ Our examination of the controverted document leads us to conclude defendant was not prejudiced by being denied in-course-of-trial access thereto.

■ It is parenthetically noted, however, much time and effort would have been saved by an appropriate in-camera hearing, during trial, as to the questioned instrument. See generally State v. Thornburgh, 220 N.W.2d 579, 586–587 (Iowa 1974); State v. Deanda, 218 N.W.2d 649, 651 (Iowa 1974); cf. Alderman v. United States, 394 U.S. 165, 181–185, 89 S.Ct. 961, 970–973, 22 L.Ed.2d 176 (1969).

Defendant's first assignment affords him no basis for reversal.

II. The remaining issue to be resolved focuses upon a jury instruction given regarding impeachment. This necessitates a prefatory review of testimony countering that presented by defendant, initially set forth above.

Donald Wolfe, a Des Moines police officer, testified he transported defendant from the Polk County Jail to the place of arraignment. When asked to relate any statement made by Morelock during the trip Wolfe stated defendant had said:

" 'When I got home there were three people there and I made four. Shortly thereafter one of them left. My wife and I had an argument and she ran out the front door. She had a gun, and we had a tussle. I took the gun away from her and it discharged. She ran toward the side of the house. I ran through the house, and as I was coming down the drive the gun discharged striking her.' "

Apparently by reason of the foregoing testimonial inconsistency an impeachment-related instruction was submitted to the jury. See State v. Peterson, 219 N.W.2d 665, 671 (Iowa 1974); Jones on Evidence, §§ 26.1–26.2 (Gard, 6th ed. 1972). Defendant timely objected thereto because it:

" * * * kind of points out the defendant and his testimony as opposed to any other person, and I think the defendant has a great enough burden now without pointing out his testimony, such as this instruction does, and I wouldn't say it's highly prejudicial, but I think it's more prejudicial than it needs to be, under the circumstances."

On appeal, however, defendant takes a different position, i. e., the instruction given erroneously failed to "include a reference to the evidence in the record and the effect of prior consistent statements of the defendant."

■ It is at once evident this assignment was never voiced in trial court. Being now raised for the first time it is not entertained. See State v. Overmann, 220 N.W.2d 914, 918 (Iowa 1974). See also State v. Blyth, 226 N.W.2d 250, 273 (Iowa 1975); State v. Dalgliesh, 223 N.W.2d 627, 630 (Iowa 1974).

■ Furthermore, where, as defendant now asserts, the instruction given was not as explicit as he may have desired or should have been enlarged, it was incumbent upon him to make an attendant specific request before the jury was charged. See State v. Blyth, *supra*; State v. Kelly, 224 N.W.2d 456, 458 (Iowa 1974). This he did not do.

As to defendant's second assignment he has failed to properly present an issue for appellate review.

Affirmed.