**Robert M. STOLTZ, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 53A04–9504–PC–146.

Court of Appeals of Indiana.

Nov. 14, 1995.

Michael A. Ksenak, D. Michael Bowman, Bowman & Ksenak, Indianapolis, for appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Robert M. Stoltz appeals from the trial court's denial of his petition for post-conviction relief.

We affirm.

### ISSUES

I. Whether Stoltz's guilty plea was voluntary.

II. Whether Stoltz was denied effective assistance of counsel.

### FACTS

On June 12, 1986, Stoltz pleaded guilty to operating a vehicle with a blood alcohol level greater than .10, a class D felony. At the guilty plea hearing, the trial court carefully advised Stoltz of the nature of the charges against him. Specifically, the trial court apprised Stoltz of the applicable punishment range, taking into consideration the fact that Stoltz had a previous conviction for operating while intoxicated within five years of the instant offense. The trial court also advised Stoltz that it could suspend his driver's license for a period of two years. Further, the trial court advised Stoltz that he was under no compulsion to plead guilty, that he was entitled to a speedy public trial by jury, that the State of Indiana had the burden of proving his guilt, that he had a right to remain silent and to confront and cross examine witnesses, and that he could compel the attendance of witnesses.

On September 8, 1986, the trial court accepted Stoltz's guilty plea and imposed a two year sentence, suspended all but five days of the sentence, and suspended Stoltz's driver's license for ninety days. On April 25, 1994, Stoltz filed a petition for post-conviction relief. After a November 28, 1994, hearing, the post-conviction court denied Stoltz's petition on December 29, 1994.

### DECISION

A petitioner bears the burden of establishing grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, 917, *reh'g denied.* In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting its judgment. *Id.* The post-conviction court acts as the sole judge of the evidence and the credibility of witnesses. *Id.* Accordingly, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the trial court to prevail on appeal from a denial of post-conviction relief. *Id.*

### I. Guilty Plea

Stoltz claims his guilty plea was not voluntarily given because the trial court did not specifically advise him that the instant conviction would result in the ten year suspension of his driver's license by the Bureau of Motor Vehicles (BMV) for being a habitual

traffic violator.[1]  Thus, he claims, the post-conviction court erred in denying his request for relief.

■ A petitioner who claims that his plea was involuntary and unintelligent must plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial court's failure to make a full inquiry in accordance with Ind.Code 35–35–1–2(a) rendered his decision involuntary or unintelligent.  *White v. State* (1986), Ind., 497 N.E.2d 893, 905.  I.C. 35–35–1–2 provides:

> (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant:
>
> (1) understands the nature of the charge against him;
>
> (2) has been informed that by his plea he waives his rights to:
>
>> (A) a public and speedy trial by jury;
>>
>> (B) confront and cross-examine the witnesses against him;
>>
>> (C) have compulsory process for obtaining witnesses in his favor;  and
>>
>> (D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;
>
> (3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences;  and
>
> (4) has been informed that if:
>
>> (A) there is a plea agreement as defined by IC 35–35–3–1;  and
>>
>> (B) the court accepts the plea;
>
> the court is bound by the terms of the plea agreement.

> (b) A defendant in a misdemeanor case may waive the rights under subsection (a) by signing a written waiver.
>
> (c) *Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.*

(Emphasis added).

■ In *Wright v. State* (1986), Ind.App., 495 N.E.2d 804, *reh'g denied, trans. denied,* we addressed an argument similar to that advanced here by Stoltz.  There, Defendant alleged his guilty plea was not entered knowingly, intelligently, and voluntarily because the trial court failed to advise him of license suspension ramifications before accepting his guilty plea.  Thus, Defendant argued, the trial court did not inform him of all possible minimum and maximum sentences as required by I.C. 35–35–1–2(a)(3).  We determined Defendant's claim had "no merit since the advisement of an administrative license suspension possibility is not required by I.C. 35–35–1–2, but instead is an ancillary matter...."  *Id.* at 805.

More recently, in *Allender v. State* (1990), Ind.App., 560 N.E.2d 545, Defendant contended his guilty plea was not knowing, voluntary and intelligent because the trial court did not advise him that his driver's license could be suspended for ten years if the BMV determined him to be a habitual traffic offender.  Noting that then Ind.Code 9–4–7–9 merely required the trial court to advise the Defendant that a record of his conviction would be forwarded to the BMV to become a part of Defendant's driving record,[2] we found:

> Nothing in the statute requires the trial court to advise a defendant of the administrative action the Bureau may take.  Further *Allender* does not assert that the advisement is constitutionally required and

---

**1.**  The record fails to reveal any evidence, other than Stoltz's bare assertion, that his driver's license was suspended for ten years.

**2.**  At the sentencing hearing here, the trial court advised Stoltz as follows:

> The Court further finds that the defendant's license to operate a motor vehicle should be suspended for a period of ninety days and that the Bureau of Motor Vehicles should be notified by the Clerk of Monroe County of the time and date of such suspension.
> (R. 95).

we can think of nothing to support such an assertion.

*Id.* at 546.

Nevertheless, Stoltz claims the trial court's failure to advise him concerning license suspension ramifications does, in fact, amount to a violation of his Fifth Amendment due process rights. Stoltz's claim is based upon the mandatory nature of then Ind.Code 9–12–2–1 (now Ind.Code 9–30–10–5) which provided in pertinent part:

(a) Whenever it appears from the records maintained in the bureau that a person's driving record brings him within the definition of an habitual violator under 9–12–1–4, *the commissioner shall mail a notice* to the person's last known address that informs the person that his driving privileges will be suspended in thirty (30) days because the person is an habitual violator according to the records of the bureau. (b) Thirty (30) days after the commissioner has mailed a notice under this section, *he shall suspend* the person's driving privileges. . . .

(Emphasis added). Thus, Stoltz notes, because he "automatically became an habitual traffic violator on the date of this [his third] conviction . . . the ten (10) year driver's license suspension was a definite, immediate and automatic consequence of his plea of guilty." Brief of Appellant at 5. Therefore, "as a matter of Due Process, [the trial court] must advise him of all direct consequences of his guilty plea, which in this case includes the ten (10) year driver's license suspension." Appellant's Brief at 12.

In support of his contention, Stoltz directs our attention to federal case law, including *Torrey v. Estelle* (1988), 9th Cir., 842 F.2d 234, wherein Defendant claimed his Fifth Amendment due process rights were violated because the trial court failed to advise him at the time he pleaded guilty that he could be resentenced to state prison if he did not behave himself while in the custody of the Youth Authority. Referencing the standard enunciated by the Supreme Court in *Brady v. United States* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747: a guilty plea is voluntary only if it is "entered by one fully aware of the direct consequences of his plea," Defendant claimed that his state prison sentence was clearly a direct consequence of his plea. In determining that Defendant's state prison sentence was actually a collateral consequence of his plea and, therefore, not violative of Defendant's right to due process, the 9th Circuit found:

The distinction between a direct and collateral consequence of a plea " 'turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " *George v. Black,* 732 F.2d 108, 110 (8th Cir.1984) (quoting *Cuthrell v. Director Patuxent Institution,* 475 F.2d 1364, 1366 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973)). Under this standard, direct consequences include a mandatory special parole term, *United States v. Harris,* 534 F.2d 141 (9th Cir. 1976); ineligibility for parole, *Munich v. United States,* 337 F.2d 356, 361 (9th Cir. 1964); and the maximum punishment provided by law, [*U.S. ex rel.*] *Pebworth* [*v. Conte* ], 489 F.2d [266] at 267 [ (9th Cir. 1974) ].

In contrast, collateral consequences include the possibility that sentences may run consecutively, *United States v. Rubalcaba,* 811 F.2d 491, 494 (9th Cir.), *cert. denied,* [484] U.S. [832], 108 S.Ct. 107, 98 L.Ed.2d 66 (1987); the possibility of revocation of parole, *Sanchez* [*v. United States* ], 572 F.2d [210] at 211 [ (9th Cir. 1977) ]; potential deportation, *Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); civil tax liability, [*United States v.*] *King,* 618 F.2d [550] at 553 [ (9th Cir.1980) ]; the likelihood of an undesirable military discharge, *Redwine v. Zuckert,* 317 F.2d 336 (D.C.Cir.1963); and the potential for civil commitment proceedings, *George v. Black,* 732 F.2d [108] at 111 [ (8th Cir.1984) ].

In many cases, the determination that a particular consequence is "collateral" has rested on the fact that it was in the hands of another government agency. . . .

*Id.* at 236.

In fact, our research reveals it is upon this very basis that the Fifth Circuit found the

required forfeiture of a defendant's driver's license to be a collateral consequence of a guilty plea and, therefore, not violative of his due process rights. In *Moore v. Hinton* (1975), 5th Cir., 513 F.2d 781, Defendant pleaded guilty to driving while intoxicated. He later brought a 42 U.S.C. § 1983 action against various Alabama authorities alleging his guilty plea was not knowingly and voluntarily entered because he was not informed that the Department of Public Safety would suspend his driver's license. Citing broad language from *Brady, supra,* and *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, concerning the "consequences" which flow from pleas of guilty, Defendant argued:

> due process requires ... that a defendant be informed of this consequence before he can voluntarily and intelligently plead guilty.

*Id.* at 782.

In holding that "a defendant need not be informed, before pleading guilty to a charge of driving while intoxicated, that as a collateral consequence of his conviction, his driver's license will be suspended," *Id.,* the Fifth Circuit noted as follows:

> Of crucial importance here, however, is the fact that the Alabama Department of Public Safety, not the court, deprives the defendant of his license, acting under authority of 36 Ala.Code § 68. The court merely accepts the defendant's plea, and sentences him to a fine and/or imprisonment. The Department of Public Safety then institutes a separate proceeding for suspension of his license; this suspension is not, therefore, punishment imposed by the court as a result of the guilty plea, but a collateral consequence of the defendant's conviction.

*Id.*

The *Moore* facts were ambiguous with respect to whether the license suspension was automatic. Nevertheless, the Fifth Circuit stated, "[w]e need not resolve this ambiguity, however, since our conclusion would be identical in either case." [3] *Id.* n. 1.

Here, the suspension of Stoltz's driver's license was a matter exclusively in the hands of the commissioner of the BMV. Furthermore, the automatic nature of his license suspension is of no moment. Accordingly, because we find no federal due process precedent compelling us to reconsider our decisions in *Wright, supra,* and *Allender, supra,* we conclude the trial court did not err in denying Stoltz's request for post-conviction relief on the basis that his guilty plea was not voluntarily given.[4]

## II. Counsel

At the hearing on his petition for post-conviction relief, Stoltz testified that his counsel did not advise him concerning suspension of his driver's license by the BMV. Thus, Stoltz next argues that "[s]ince the ten (10) year habitual traffic violator suspension is a direct consequence of the defendant's guilty plea in this case ... counsel's failure to advise Stoltz that not only would he receive a driver's license suspension of not more than two (2) years based upon this conviction, but, in addition, he would receive a ten (10) year driver's license suspension, constitutes ineffective assistance of counsel and this deficiency prejudiced Stoltz." Brief of Appellant at 15–6. In support of his contention, Stoltz cites *United States v. Banda* (1993), 5th Cir., 1 F.3d 354, wherein the Fifth Circuit stated, "[d]efense counsel has done all he must under the Constitution when he advises his client of the direct consequences of a guilty plea." Id. at 356. Stoltz's reliance upon the foregoing quotation as authori-

---

**3.** Several of our sister states have also held that license revocation is a collateral consequence to a guilty plea. *See, e.g., Villa v. State* (1983), Del., 456 A.2d 1229, and cases cited therein; *State v. Madison* (1984), Wis.Ct.App., 120 Wis.2d 150, 353 N.W.2d 835, and cases cited therein.

**4.** We find Stoltz's argument that his guilty plea was not entered voluntarily because the trial court misrepresented the amount of time his

license could be suspended to be similarly unavailing.

Specifically, the trial court advised Stoltz that it could suspend his license for up to two years as part of his court-imposed punishment.

Thus, because the substance of the advisement was separate and distinct from the administrative license suspension imposed by the BMV, we are not persuaded that the trial court "misrepresented" any fact to Stoltz.

ty for his contention counsel was ineffective is misplaced.

■ In *Banda,* Defendant argued that his attorney's failure to advise him of deportation consequences attendant to pleading guilty denied him effective assistance of counsel. The Fifth Circuit found:

> The courts that have addressed the question of counsel's failure to warn of possible deportation have uniformly held that deportation is a collateral consequence of the criminal process and hence the failure to advise does not amount to ineffective assistance of counsel. *See,* for example, *Varela v. Kaiser,* 976 F.2d 1357, 1358 (10th Cir. 1992) (citing cases from the 2nd, 4th, 7th, and 11th circuits), and *United States v. Del Rosario,* 902 F.2d 55, 58–59 (D.C.Cir.1990). We are not aware of any court that has held to the contrary. Indeed, this conclusion squares with the Supreme Court's observation that the accused must be "fully aware of the *direct* consequences" of a guilty plea. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (emphasis added). We find this position persuasive and adopt it as our own.

*Id.* at 356. Thus, because we have established that the suspension of one's driver's license is a collateral consequence to a plea of guilty, *Banda* is not authority for Stoltz's proposition that his trial counsel was ineffective.

■ In general, to show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Hinkle v. State* (1992), Ind.App., 605 N.E.2d 200, 203, *reh'g denied, trans. denied.* However, where a defendant challenges counsel's performance after pleading guilty, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 204. Here, even if we were to assume that Stoltz's counsel was ineffective, our review of the record before the post-conviction court indicates that Stoltz failed to establish he would not have pleaded guilty but would, instead, have insisted upon going to trial.

At the sentencing hearing, Stoltz was represented by private counsel, James Voyles and Joseph O'Connor, II. Voyles elicited testimony from a family friend indicating that an executed sentence would not be in Stoltz's best interests. Voyles echoed this sentiment in his statement to the trial court. Furthermore, the record contained an evaluation of Stoltz from a psychologist; an evaluation from a substance abuse counselor; and approximately twenty-two letters from various individuals, including prominent businessmen, attorneys, doctors and friends. The gist of the correspondence was that Stoltz would benefit from counseling, that if given a third chance he could mend his ways, and that jail would be a detriment to him.

At the hearing on Stoltz's petition for post-conviction relief, Stoltz testified as follows on direct examination:

Q. Did you discuss with Mister Voyles any possible defenses to going to trial?

A. Because of the validity of the breathalyser, he had contacted some man, whose name I cannot remember, in Columbus, Ohio who apparently had something to do with the invention of that machine. We had gone out there, and after talking with this person he thought if we went to trial we could have beat the machine. However, I was never told. In the meantime, there was a plea bargain that came up and he thought he could get me out without doing any kind of jail time, is what it amounted to. So versus going to trial and losing all together or taking this plea bargain which meant there was no jail time, I opted for that, Had I know [sic] I was going to lose my driver's license for ten years I would have probably gone to trial and taken my chances.

(R. 104–5).

Stoltz testified further as follows on cross-examination:

Q. How long did [sic] your mother or stepmother, foster mother been an attorney?

A. Forty years probable.

Q. And you saw her daily prior to this plea?

A.  Yes.

Q.  And she thought this plea was a good idea?

A.  Yes, because of the jail time.

Q.  Because of the jail time, right?

A.  Yes.

Q.  And you got the benefit of that?

A.  Yes.

(R. 108).

Q.  And she never brought up the habitual offender did she?

A.  No.

\*     \*     \*     \*     \*     \*

Q.  And this was an incredibly good deal for year[sic], wasn't it?

A.  Yes it was.

Q.  And you jumped right at it?

A.  Yes, when I figured that I wasn't going to go to jail because of this thing, I took it.

(R. 109).

Thus, the record is devoid of any affirmative assertion that had he known of the license suspension consequences, Stoltz would have "insisted" upon going to trial. Rather, the record merely indicates that he "probably" would have gone to trial. Furthermore, as the State points out, Stoltz's assertion now that he would not have pleaded guilty is belied by the evidence which reveals his enthusiasm for the lack of jail time associated with the plea.

As noted, *supra*, Stoltz bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. However, on this issue, the post-conviction court specifically found, "[i]t is not possible for the Court to determine, as a factual matter, what the defendant might have done in 1986 if he had known about the habitual offender law," (R. 83), and our review of the evidence does not lead unerringly to the opposite conclusion. The post-conviction court

did not err in denying Stoltz's request for post-conviction relief.

Affirmed.

CHEZEM and RUCKER, JJ., concur.