# IN THE COURT OF APPEALS OF IOWA

No. 22-0523
Filed May 24, 2023

**KELLY CHARLES SAND,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

An applicant appeals the denial of postconviction relief, alleging his plea counsel was ineffective. **AFFIRMED.**

Nathan Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

Because his plea counsel did not tell him about a "silent mandatory sentence," Kelly Sand claims he received ineffective assistance. That claim was the backbone of Sand's application for postconviction relief (PCR) from six convictions following plea negotiations with the State. He argues sex offender treatment program (SOTP) policies within the Iowa Department of Corrections (DOC) may result in him serving more time and counsel failed to advise him of that likelihood. Finding parole eligibility was not a direct consequence of Sand's guilty pleas, the district court rejected the ineffective-assistance claim and denied relief. We do the same.

### I. Facts and Prior Proceedings

In 2017, Sand accepted a plea agreement covering two prosecutions. In the first case, the State charged Sand with burglary in the first degree and two counts of harassment in the first degree. The charging documents alleged that after sending his ex-girlfriend, K.D., harassing text messages, Sand broke into her house and brandished a knife. When police found him in a neighboring yard, he threatened to kill the officers.

In the second case, the State charged Sand with burglary in the first degree, assault with intent to commit sexual abuse causing bodily injury, willful injury causing bodily injury, enhanced domestic abuse assault, and operating a motor vehicle without the owner's consent. The charging documents alleged that Sand entered K.D.'s house in violation of a no-contact order. Once inside, he demanded oral sex, began to "rip off her clothes," and strangled her until she passed out. When she regained consciousness, she fought with him, and he twisted her arm.

Eventually, she escaped to a neighbor's house and called for help. When the police arrived, Sand took her car without permission.

Sand worked out a plea agreement with the State to resolve all counts. In both prosecutions, the State amended the burglary charges from first degree to second degree. The State also dismissed the charges of assault with intent to commit sexual abuse and operating a motor vehicle without the owner's consent. Sand then pleaded guilty to two counts of second-degree burglary, two counts of first-degree harassment, one count of willful injury causing bodily injury, and one count of second-offense domestic abuse assault. *See* Iowa Code §§ 713.5, 708.7, 708.1 (2017). The district court sentenced him to an indeterminate term of twenty-nine years.

Representing himself, Sand filed a PCR application in 2018 that counsel amended in 2019. In those proceedings, Sand asserted that his plea counsel was ineffective because she failed to advise him that "even if he was sent to prison on a non-sexual offense, the Department of Corrections could determine the offense to be of a sexual nature and require him to complete sexual offender treatment programming prior to being released on parole." He claimed that if properly advised, he would not have accepted the plea offer and would have gone to trial on the original charges.

While this PCR was pending, Sand and six other offenders filed PCR petitions in Jasper County alleging that Iowa's failure to adequately fund SOTP violated their due process liberty interest in parole. *See Bomgaars v. State*, 967 N.W.2d 41 (Iowa 2021). Those consolidated cases challenged the DOC procedure for determining when inmates could begin SOTP. *Id.* at 42. Because of limited

resources and a large wait list, most inmates could not receive treatment until near their tentative discharge date. *Id.* The *Bomgaars* court recognized that the offenders enjoyed a protected liberty interest in parole. *Id.* at 48 (highlighting mandatory release language in Iowa's parole statute). But the court found no unconstitutional deprivation of due process and denied relief. *Id.* at 55 (explaining liberty interest was subject to reasonable limits on SOTP programming including classroom space and available instructors).

After *Bomgaars*, Sand argued that because he had a liberty interest in being paroled, plea counsel had a material duty to tell him how the possibility of SOTP would affect the length of his prison stay. The district court rejected that argument, finding even after *Bomgaars*, parole eligibility remains a collateral consequence of a guilty plea. Because plea counsel did not have a duty to inform Sand of collateral consequences, he could not show ineffective assistance and was not entitled to relief from his convictions. Sand now appeals that PCR ruling.

**II. Scope and Standards of Review**

As a baseline, we review PCR rulings for correction of errors at law. *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). But when applicants raise constitutional issues, such as ineffective assistance of counsel, our review is de novo. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

**III. Analysis**

We analyze ineffective-assistance-of-counsel claims under a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, Sand must show a deficiency in counsel's performance and that the deficient performance prejudiced him. *Id.* We measure counsel's performance against the standard of

a reasonably competent practitioner. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). On the prejudice prong, because Sand pleaded guilty, he must show that but for his attorney's omission he would have insisted on going to trial. *See State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009).

Sand alleges his counsel's performance was subpar because she failed to inform him of the consequences of his guilty plea. Sand was originally charged with a sexually motivated crime: assault with intent to commit sexual acts. *See* Iowa Code § 709.11. But the State dismissed that charge as part of the plea agreement. Both Sand and his attorney agree that she did not discuss SOTP as a potential consequence of the plea bargain because he was not pleading guilty to a sexually motivated crime. On the flipside, counsel did not tell Sand that he was exempt from the DOC requirement for sex offender treatment.

In reviewing Sand's claim, we start with the basics. A guilty plea must be "made voluntarily and intelligently." Iowa R. Crim. P. 2.8(2)(b). To ensure that a plea is voluntary and intelligent, the district court must inform the defendant of its direct consequences. *State v. Carney*, 584 N.W.2d 907, 908 (Iowa 1998). But the court need not tell the defendant about "all indirect and collateral consequences of a guilty plea." *Id.* The same is true when it comes to plea counsel; failure to inform the client of collateral consequences does not constitute deficient performance. *Doss v. State*, 961 N.W.2d 701, 713 (Iowa 2021). Yet plea counsel does deliver a deficient performance by misinforming their client as to those consequences. *Id.*

So how do we draw the line between direct and collateral consequences? A consequence is direct if it has a "definite, immediate and largely automatic effect" on the range of the punishment faced by the defendant. *Id.* at 710 (citation

omitted); *but see Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (rejecting notion that distinction between direct and collateral consequences defines scope of reasonable professional assistance under *Strickland*). Sand insists that his required participation in SOTP was "a foreseeable consequence" of his guilty pleas even though he did not plead to a sex crime. *See State v. Iowa Dist. Ct.*, 888 N.W.2d 655, 667 (Iowa 2016) (holding that chapter 903A does not require a judge or jury to make a factual finding that an offense was sexually motivated before the DOC may refer an offender to SOTP, rather DOC can refer an offender to SOTP based on a victim's detailed account in a police report.). Sand likens the SOTP requirement to immigration consequences. *See Diaz v. State*, 896 N.W.2d 723, 729 (Iowa 2017) (holding that defense counsel must tell clients about potential immigration consequences should they plead guilty.).

The State counters that "numerous repercussions of a plea have been held to be collateral consequences that a defendant need not be informed of prior to entering a plea" including parole eligibility. *See Smith v. State*, No. 08-0362, 2008 WL 5235548, at *3 (Iowa Ct. App. Dec. 17, 2008) (holding SOTP was not direct consequence of guilty plea). But is that true post-*Bomgaars*? Does the supreme court's recognition that offenders have a liberty interest in parole mean that parole eligibility becomes a direct consequence of a guilty plea? The district court said no, and we agree.

Less than a month after deciding *Bomgaars*, the supreme court reiterated: "Parole eligibility is a collateral consequence of a plea." *Sothman v. State*, 967 N.W.2d 512, 523 (Iowa 2021) (quoting *Stevens v. State*, 513 N.W.2d 727, 728 (Iowa 1994)). The court rejected Sothman's claim that "her plea counsel breached

an essential duty by failing to correctly advise her on when she would realistically be considered" for parole. *Id.* *Sothman* is instructive here. Sand's plea counsel had no duty to warn that the DOC could require him to participate in SOTP and delay his parole eligibility. Because Sand's counsel did not provide any misinformation, her performance did not fall below the standard of a reasonably competent practitioner. *See id.*

The "silent mandatory sentence"—experienced by Sand and other offenders as they waited for SOTP before being eligible for parole—did not have the same fixed effect on their range of punishment as actual mandatory minimum sentences. In *Bomgaars*, the district court found that the DOC was "reducing the backlog of inmates awaiting SOTP." 967 N.W.2d at 45. But like any estimate on the likelihood of parole, there are no guarantees as to a release date. *See Sothman*, 967 N.W.2d at 525. The conditions of Sand's release depended on decisions by the DOC and board of parole, so they did not have the sort of "definite, immediate and largely automatic effect" on the range of punishment as direct consequences of a plea. *See Doss*, 961 N.W.2d at 713. So plea counsel's failure to discuss these collateral consequences was not deficient performance.[1] *See id.*

Because Sand failed to prove deficient performance, we need not consider the prejudice element of his claim. *See Dempsey*, 860 N.W.2d at 868.

**AFFIRMED.**

---

[1] That said, it may be desirable for counsel to advise their clients that SOTP might be required and might affect their parole eligibility, even if they don't plead guilty to a sex offense. *Cf. Blaise v. State*, No. 10-0466, 2011 WL 2078091, at *4 (Iowa Ct. App. May 25, 2011) (discussing possibility of civil commitment as a sexually violent predator).