# IN THE COURT OF APPEALS OF IOWA

No. 24-0555
Filed July 23, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KYLE JAYMEZ BIGBEAR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County,
Zachary Hindman, Judge.


        A defendant challenges his conviction for eluding and a habitual-offender
sentencing enhancement. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Mary K. Conroy (argued),
Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Adam Kenworthy (argued) and Joseph
D. Ferrentino, Assistant Attorneys General, for appellee.


        Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

A jury found Kyle Bigbear guilty of eluding while exceeding the speed limit by twenty-five miles per hour or more, a class "D" felony.[1] *See* Iowa Code § 321.279(2)(a) (2023). After the verdict was returned, Bigbear stipulated that he had been convicted previously of at least two felony offenses, thereby subjecting him to sentencing as a habitual offender for the eluding charge. The district court sentenced Bigbear to fifteen years in prison as a habitual offender, with a mandatory minimum of three years. On appeal, Bigbear challenges the district court's ruling on his motion to suppress and argues his stipulation to the habitual-offender enhancement was involuntary and unintelligent.

## I.      Background Facts

Nebraska law enforcement officers were searching for Bigbear to execute outstanding arrest warrants when an investigatory camera system flagged a vehicle associated with Bigbear. An officer located the vehicle parked in a nearby driveway. After conducting surveillance of the area, the officer observed an individual wearing a black hooded sweatshirt enter the vehicle. As the officer followed it, the vehicle's driver appeared to make evasive maneuvers to avoid being followed. This prompted the officer to activate his emergency lights to initiate a stop. The vehicle's driver did not stop. Instead, the driver led the officer on a high-speed chase that crossed the border into Iowa, where Sioux City officers

---

[1] Multiple simple-misdemeanor driving charges related to the eluding were tried to the court as the eluding charge was tried to the jury. The court found Bigbear guilty of several of those charges. As each of those charges was brought in a separate court file, they are not issues in this appeal, so we do not address them.

joined the chase. Eventually, the vehicle was abandoned in Sioux City and a foot chase led to the officers apprehending Bigbear.

He was arrested and read his *Miranda* rights by a Sioux City officer. *See Miranda v. Arizona*, 384 U.S. 436, 467–70 (1966). In response, Bigbear said, "I want a lawyer." After being placed in the squad car, a Nebraska officer who was not present when Bigbear invoked his right to counsel, approached the vehicle and engaged in the following exchange:

> Officer: Kyle, what's going on? Why did you run from me?
> Bigbear: Got scared.
> Officer: Got scared? You saw me. I didn't have my lights on or nothing, and you start taking off.

Bigbear sought to exclude evidence of this exchange via motion to suppress.

## II. Motion to Suppress

Bigbear filed a motion to suppress the statements he made after invoking his right to counsel. He sought to exclude them both from the prosecution's case-in-chief and from the use of impeachment if he chose to testify. The district court granted the motion in part, suppressing the statements for use in the State's case-in-chief but allowing their use for impeachment purposes. On appeal, Bigbear argues that the district court erred in permitting the statements for impeachment because they were involuntary and their admission—even for the limited purpose of impeachment—violates article I, section 10 of the Iowa Constitution.

We review challenges to a district court's denial of a motion to suppress based on constitutional grounds de novo. *State v. Cyrus*, 997 N.W.2d 671, 676 (Iowa 2023). With de novo review, we examine the record and "independently evaluate the totality of the circumstances." *Id.* (citation omitted). Although we give

deference to the district court's factual findings, particularly those involving witness credibility, we are not bound by them. *Id.*

Bigbear's argument centers on the claim that article I, section 10 of the Iowa Constitution mandates complete suppression of statements obtained after a defendant invokes the right to counsel. The State contends that this issue was not preserved for appellate review, and we agree for two reasons.

First, to preserve error for appellate review, a party must raise the issue and obtain a ruling from the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We agree with Bigbear that he raised the issue by citing to both the United States Constitution and the Iowa Constitution in his motion to suppress. However, the district court's ruling contains no indication that it considered article I, section 10 of the Iowa Constitution in reaching its decision.

Bigbear relies on *State v. Hauge* to argue that error was preserved. 973 N.W.2d 453, 461 (Iowa 2022). In *Hauge*, the court found error was preserved when the district court's sparse ruling did not explicitly cite the constitutional provision raised in the motion to suppress but cited to both federal and state precedent to show it analyzed the constitutional issues presented. *Id.* But that's not what happened here. Here, the district court's ruling is detailed and expansive—even discussing how other jurisdictions handle statements obtained in violation of *Miranda* for impeachment purposes—but it makes no mention of the Iowa Constitution or any Iowa case law addressing Bigbear's argument based on the Iowa Constitution. In some instances, a district court's sparse or incomplete reasoning may be sufficient to preserve an issue, but error cannot be preserved when there is no indication the court considered the issue at all. *Meier*, 641 N.W.2d

at 540. Because there is no indication the district court considered Bigbear's claim under the Iowa Constitution, Bigbear was required to bring the court's failure to address the Iowa constitutional claim to its attention in some fashion. *State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025) (en banc). He did not do so. As a result, the issue is not preserved for our review.

Second, even if we assumed Bigbear received a ruling on the issue, Bigbear failed to preserve error for another reason. He did not testify at trial, so the challenged evidence was never presented to the jury. On appeal, Bigbear contends his constitutional right to testify was violated because the court's suppression ruling caused him to choose not to testify. But our case law is clear that, to preserve error on his claim that unconstitutionally obtained evidence could not be used to impeach him if he testified, Bigbear was required to testify and have the challenged evidence admitted for impeachment purposes. *See State v. Derby*, 800 N.W.2d 52, 59 (Iowa 2011) ("It has long been settled law that a criminal defendant must testify and confront the impeachment evidence before seeking an appellate determination of admissibility."). As our supreme court stated in *State v. Davis*, "[A] defendant must take the stand and testify and the prosecutor must use the statement to impeach before the defendant can raise a constitutional claim such as we have here—that his prior statement could not be used for impeachment because it was involuntary." 328 N.W.2d 301, 306 (Iowa 1982). Because Bigbear never testified, it is speculative to assume what his testimony would have been and whether the State could have used the prior statement for impeachment purposes. As a result, the issue was not properly preserved, and there is nothing for this court to review on this issue.

### III.    Habitual-Offender Sentencing Enhancement

As noted, after the jury returned a guilty verdict on Bigbear's felony eluding charge, he indicated an intention to stipulate to prior felony convictions that would result in him being sentenced as a habitual offender. Based on Bigbear's stated intention, the court conducted a colloquy to establish a factual basis for the enhancement. Following that colloquy, the court determined that Bigbear was a habitual offender and sentenced him accordingly. Bigbear challenges the sufficiency of the colloquy, contending his admissions that formed the basis for the habitual-offender enhancement were not voluntary and intelligent.

Before turning to the merits of Bigbear's challenge, we first address the State's claim that Bigbear failed to preserve error because he did not file a motion in arrest of judgment. Stipulating to prior offenses for sentencing-enhancement purposes is akin to entering a guilty plea, so we follow guilty-plea rules. *State v. Smith*, 924 N.W.2d 846, 850 (Iowa 2019). As with a challenge to a guilty plea, a challenge to a sentencing-enhancement stipulation must be raised by filing a motion in arrest of judgment to preserve error. *Id.* at 850–51. While Bigbear's failure to file such a motion would ordinarily result in his challenge to the stipulation not being preserved for appellate review, there is an exception. When the court fails to adequately advise a defendant of the obligation to file a motion in arrest of judgment, the defendant's failure to do so before challenging the plea on appeal does not trigger the error-preservation bar, and the appellate court may consider the challenge to the plea on its merits. *Id.* at 851.

Here, there is no question the court failed to give Bigbear the motion-in-arrest-of-judgment advisory during the stipulation colloquy. The State concedes

this omission but claims the court's written order that followed saved the day. It did not. The relevant part of the order stated, "The defendant is hereby notified that any motion for a new trial or for arrest of judgment must be filed within forty-five days from today and at least five days before the date fixed for sentencing." In context, this language was part of an order announcing the jury's verdict; it did not refer to Bigbear's habitual-offender stipulation. So it is questionable whether it has any bearing on the required advisory about challenging his habitual-offender stipulation. But even if we overlook that shortcoming, the language did not advise Bigbear that failure to file a timely motion in arrest of judgment challenging his habitual-offender stipulation would preclude him from making such a challenge on appeal. Because the advisory failed to warn Bigbear of the consequences of failing to file a motion in arrest of judgment, Bigbear is not precluded from challenging his prior-offense stipulation on appeal even though he did not file such a motion. *See id.* at 851–52. Accordingly, we proceed to address his challenge on the merits.

Prior to accepting a stipulation to a habitual-offender enhancement, the court must determine that a factual basis exists for the defendant's affirmation and must conduct a colloquy with the defendant to ensure any admission is voluntary. Iowa R. Crim. P. 2.19(8)(a). During this colloquy, the court is required to inform the defendant of various details. One of those details is "the maximum and minimum possible punishment resulting from the enhancement." Iowa R. Crim. P. 2.19(8)(a)(3). Bigbear acknowledges that the district court informed him of the minimum and maximum periods of incarceration for the habitual-offender enhancement. But he contends the district court failed to satisfy the requirement of rule 2.19(8)(a)(3) in two ways: (1) by failing to inform him that the court could

suspend the term of incarceration and place him on probation; and (2) by failing to inform him there is no minimum fine for the enhanced offense.

As to Bigbear's first contention, he cites no applicable authority supporting it, so that could end the inquiry. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). But we address it nonetheless. To accept Bigbear's stipulation to the prior offenses supporting the habitual-offender enhancement, the court was required to inform Bigbear of direct consequences of his stipulation, but it was not required to inform him of all indirect and collateral consequences. *See Doss v. State*, 961 N.W.2d 701, 709–10 (Iowa 2021). What distinguishes a direct from a collateral consequence is whether the consequence "represents a definite, immediate and largely automatic effect on the range of defendant's punishment." *Id.* at 710 (quoting *State v. Carney*, 584 N.W.2d 907, 908 (Iowa 1998)). While Bigbear was eligible for probation despite a habitual-offender enhancement, *see State v. Washington*, 356 N.W.2d 192, 197 (Iowa 1984), he provides no persuasive argument as to how the potential for probation has a definite, immediate, and largely automatic impact on the range of his potential punishment. Further, the court is not ordinarily required to advise a defendant of the possibility of probation before accepting a guilty plea. *See* 22 C.J.S. *Criminal Procedure and Rights of Accused* § 245 (2025); *State v. Stastny*, 395 N.W.2d 492, 494 (Neb. 1986) ("[N]o authority exists in this state that requires the defendant to be informed of the possibility of probation . . . ."). The court informed Bigbear of the minimum and maximum range of incarceration he faced if he chose to stipulate to the habitual-offender enhancement. We are not persuaded that Bigbear's eligibility for

probation definitely, immediately, and automatically impacted the range of punishment in a way that would render it a direct consequence of his stipulation—thereby requiring the court to advise him of it.  We also note that Bigbear does not persuasively explain why being advised of the eligibility for probation would have impacted his decision to stipulate to the enhancement.  He was informed he faced three to fifteen years of incarceration if he stipulated to the enhancement, and he chose to stipulate nonetheless.  We do not see how knowing he may have that term of incarceration suspended and be granted probation would make him less likely to enter the stipulation.[2]  We conclude that the court's failure to advise Bigbear of his eligibility for probation did not cause Bigbear's stipulation to the habitual-offender enhancement to be involuntary or unintelligent.

Finally, we address Bigbear's claim that his stipulation to the enhancement became involuntary and unintelligent because the court failed to inform him that there is no minimum fine for the enhanced offense.  We find this claim to be meritless.  Iowa Rule of Criminal Procedure 2.19(8)(a)(3) required the court to inform Bigbear of "the maximum and minimum possible punishment resulting from the enhancement."  It did not require the court to inform him of all possible forms of punishment he did not face.  Because neither the eluding statute, *see* Iowa Code § 321.279(2)(a), nor the habitual offender statutes, *see id.* § 902.8, .9, provide for a fine, Bigbear did not face a fine if he stipulated to the habitual-offender

---

[2] Iowa Code section 814.29 prohibits vacating a guilty plea based on an alleged defect in the plea proceedings "unless the defendant demonstrates that the defendant more likely than not would not have pled guilty if the defect had not occurred."  Neither party addresses whether section 814.29 applies to a stipulation to prior offenses for sentencing-enhancement purposes, so we express no opinion on the applicability of section 814.29 in this context.

enhancement. *See State v. Ross*, 729 N.W.2d 806, 809 (Iowa 2007). As no fine could be imposed, it was not part of the maximum and minimum possible punishment resulting from the enhancement. So, just like the court had no obligation to inform Bigbear of all other forms of punishment he did not face—for example, the fact that he faced no sex-offender-registration requirements or the death penalty—the court had no duty to inform Bigbear that he did not face a fine. *See State v. Hamann*, 262 N.W.2d 495, 501 (N.D. 1978) (finding a defendant's contention that the court had to inform the defendant that there is no mandatory minimum punishment to be without merit). As such, we reject Bigbear's claim that his stipulation to the enhancement was involuntary and unintelligent based on the court's failure to advise him that he faced no fine.

## IV.    Conclusion

Bigbear failed to preserve error as to his claim that the district court improperly permitted his statements obtained in violation of *Miranda* warnings to be used for impeachment purposes. Bigbear's stipulation to the habitual-offender enhancement was not made involuntary and unintelligent due to the court's failure to advise him of his eligibility for probation or that no fine could be imposed.

**AFFIRMED.**