# IN THE COURT OF APPEALS OF IOWA

No. 19-0551
Filed April 1, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHRISTOPHER LEE ROBY JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Alan T. Heavens and Kellyann M. Lekar, Judges.

Christopher Roby appeals from his convictions and sentences for sexual abuse in the third degree, possession of marijuana with intent to deliver, and eluding. **AFFIRMED.**

Marti D. Nerenstone, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

Lamenting his decision to plead guilty, Christopher Roby appeals his convictions and sentences for eluding, possession with intent to deliver marijuana, and third-degree sexual abuse, arguing his counsel was ineffective by failing to challenge his arrest, bail, and guilty plea. We find his arguments without merit and affirm.

**I. Background Facts and Proceedings.**

This appeal stems from Roby's guilty plea to three unrelated charges: eluding, possession with intent to deliver, and third-degree sexual abuse. We address the factual basis and proceedings for each charge.

**A. Eluding.** On October 23, 2017, when Roby was seventeen, he was charged with eluding, interference with official acts, driving without a license, reckless driving, and driving at an excessive speed. He was cited and released to his mother at the scene. In November, he pled guilty to driving without a license, speeding, and reckless driving. The State did not pursue the eluding and interference charges at that time.

But Roby turned eighteen in early May 2018. On May 23, the State filed a criminal complaint for the eluding charge and an arrest warrant issued the same day. A trial information formally charged him with eluding in violation of Iowa Code section 321.279(2) (2017), an aggravated misdemeanor, on June 5.

**B. Possession with Intent to Deliver.** On May 31, officers spotted Roby and Tiara Bell, Roby's alleged girlfriend, exit Bell's house, walk to the garage, and get in her vehicle. The officers knew there was an active arrest warrant for Roby based on the eluding charge, so they decided to make contact and pulled up to the

garage. Upon first contacting Roby and Bell, officers smelled the odor of marijuana emanating from the vehicle. Roby was ordered out of the vehicle and arrested on the eluding warrant. As for Bell, the officers removed her from the vehicle, read her *Miranda* rights, and questioned her. Bell told officers there was no marijuana in the vehicle, but she admitted police would find "grams" of marijuana in the apartment. According to Bell, Roby obtained this marijuana for both of them. Bell also told officers that Roby stayed with her in the apartment and had slept on the left side of the bed the previous night.

Based on the odor of marijuana coming from the car and Bell's information, officers obtained a search warrant for the vehicle, garage, and house. During their search, the officers found about twenty-five grams of marijuana in the bedroom. Roby was charged by trial information with one count of possession of a controlled substance with intent to deliver in violation of Iowa Code section 124.401(1)(d), a class "D" felony.

**C. Third-Degree Sexual Abuse.** On August 30, Allen Memorial Hospital notified the Iowa Department of Human Services and law enforcement that its staff was caring for a thirteen-year-old patient who was eight weeks pregnant. She claimed she recently had sexual contact with Roby, and she believed he was the father of her child. On October 5, Roby was charged by trial information with third-degree sexual abuse in violation of Iowa Code section 709.4(b)(2), a class "C" felony.

**D. Guilty Plea and Sentencing.** On March 28, 2019, Roby pled guilty to eluding, possession of marijuana with intent to deliver, and sexual abuse in the third degree. In an apparent scrivener's error, the written guilty plea for the eluding

charge listed the offense date as October 2018 instead of October 2017. No one noticed this error during the plea and sentencing hearing.

To avoid a trial, Roby agreed to a ten-year sentence on the sexual-abuse charge, a five-year sentence on the marijuana-possession charge, and a two-year sentence on the eluding charge. The agreement confirmed his sentences would run concurrently. On the sexual-abuse charge, he agreed to the lifetime special sentence. He waived his right to file a motion in arrest of judgment and immediately proceeded to sentencing. He acknowledged that there was a federal indictment pending. He also stated that he was satisfied with his attorney's representation.

The court accepted Roby's guilty pleas, agreed with the parties' sentencing recommendation, and sentenced Roby in accordance with the agreement. Three days after his plea and sentencing, Roby filed a pro se motion stating, "I would like to rescind my plea deal." Roby filed notice of appeal two days later.

**II. Standard of Review.**

Generally, a criminal defendant must "challenge the adequacy of a guilty plea proceeding by" raising the issue in a motion for arrest of judgment. Iowa R. Crim. P. 2.24(3). Roby waived his right to file a motion in arrest of judgment and now pursues these claims under an ineffective-assistance-of-counsel framework. We review ineffective-assistance-of-counsel claims de novo. *State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017).

**III. Analysis.**

To establish ineffective assistance, Roby must show by a preponderance of the evidence (1) his counsel failed to perform an essential duty, and (2) prejudice

resulted.[1]  *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).  On appeal, Roby argues his counsel was ineffective by: (A) failing to challenge the State's decision to pursue the eluding charge as a violation of the constitutional prohibitions against double jeopardy; (B) failing to challenge the constitutionality of his arrest warrant; (C) failing to argue his bond was excessive; (D) allowing him to enter a guilty plea to possession with intent to deliver without a sufficient factual basis; (E) failing to ensure his guilty pleas were knowing and voluntary; and (F) committing structural error.  We address these claims in turn.

**A.  Double Jeopardy.**  "Generally, 'the Double Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he has already been tried and acquitted or convicted on the lesser included offense.'"  *State v. Trainer*, 762 N.W.2d 155, 157 (Iowa Ct. App. 2008) (quoting *Ohio v. Johnson*, 467 U.S. 493, 501 (1984)).  Roby argues that the State pursuing the eluding charge after he pled guilty to the speeding violation arising out of the same incident constituted a double jeopardy violation because speeding is a lesser-included offense of eluding.

In Iowa, a person may commit the offense of eluding in varying degrees of severity ranging from a serious misdemeanor to a class "D" felony depending on what the person is doing while eluding.  For example, a person commits felony eluding when they elude while also participating in a felony public offense,

---

[1] The State argues that under the amended Iowa Code sections 814.6 and 814.7 (2019), Roby cannot appeal a guilty plea and cannot raise any of these ineffective-assistance-of-counsel claims on direct appeal.  In *State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019), the Iowa Supreme Court held these amendments "do not apply to a direct appeal from a judgment and sentence entered before July 1, 2019."  We find the record here adequate to address Roby's claims on direct appeal.

operating while intoxicated, or if they injure someone while eluding. *See* Iowa Code § 321.279(3). Roby was charged with aggravated misdemeanor eluding, which arises when the driver eludes while "exceed[ing] the speed limit by twenty-five miles per hour or more." *Id.* § 321.279(2).

Yet we have previously concluded that the conditions resulting in varying degrees of eluding are not lesser-included offenses of eluding but are instead differing sentencing levels. *See, e.g.*, *State v. Rice*, 661 N.W.2d 550, 551 (Iowa Ct. App. 2003) (concluding that "the [eluding] statute does not define three separate offenses, but rather one offense, eluding, with three possible sentencing levels"). We also noted, however, that "even if operating while intoxicated was a lesser-included offense of eluding . . . , the crimes may still be punished separately, as there is a clear legislative intent to impose cumulative punishments." *Id.*

Using this same rationale, we conclude speeding is not a lesser-included offense of eluding. Roby has failed to prove a double jeopardy violation and, as a result, cannot show his counsel failed to perform an essential duty.

**B. Constitutionality of the Arrest Warrant.** Roby argues there was no probable cause for an arrest warrant based on the eluding charge and the arrest warrant violated his right to due process. This claim is based on Roby's failed argument that the eluding charge constituted double jeopardy.

Iowa Code section 804.1(1) permits issuing an arrest warrant upon filing a complaint if "there is probable cause to believe an offense has been committed and a designated person has committed it." Here, while the offense occurred in October 2017, the criminal complaint was filed in May 23, 2018, and an arrest warrant was issued the same day. Moreover the basis of the criminal complaint

was the officer's personal observations of Roby. Because there was probable cause that Roby committed the offense of eluding, the arrest warrant was constitutional. For that reason, Roby cannot show his counsel failed to perform an essential duty by not pursuing this claim.

**C. Excessive Bond.** Roby next argues the initial $50,000 bond amount set for the eluding charge was unconstitutionally excessive. That amount was set by a district associate judge in the arrest warrant. After Roby was arrested, he filed a pro se motion for bond reduction, which was granted, reducing his bond to $5000 cash or surety. Roby complains that the $5000 amount was still above the amount recommended in the uniform bond schedule and was therefore excessive.

The Iowa Supreme Court's Uniform Bond Schedule, by its terms, "shall be used only if the person was arrested for a crime other than a forcible felony *and the courts are not in session.*" Supervisory Order Amending the Uniform Bond Schedule, Iowa Judicial Council (Aug. 2, 2017) (emphasis added). The Uniform Bond Schedule provides that when court is in session, "[j]udicial officers shall exercise discretion in establishing bond in accordance with the factors set forth in Iowa Code section 811.2(2)." Iowa Code section 811.2(2) lists several factors the court must consider in determining conditions of release, including, among other things, "the nature and circumstances of the offense charged" and "the defendant's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." Nothing in that section requires the court to abide by the Uniform Bond Schedule. Here, upon his request, Roby participated in an individualized bond review and the amount was reduced accordingly. We

find bond was not excessive, and counsel did not fail to perform an essential duty by not raising this claim.

**D. Factual Basis for Guilty Plea.** Roby next argues his counsel was ineffective by allowing him to plead guilty to possession with intent to deliver without a factual basis. Roby argues there is no evidence in the record that he intended to deliver drugs to anyone or evidence that the substance found was marijuana.

Counsel violates an essential duty by allowing a defendant to plead guilty to an offense without a sufficient factual basis. *State v. Philo*, 697 N.W.2d 481, 485 (Iowa 2005). Whether there is a factual basis "is an objective inquiry that has nothing to do with the state of mind of the accused, but everything to do with the state of the record evidence." *State v. Finney*, 834 N.W.2d 46, 55 (Iowa 2013). The record as a whole must establish facts sufficient to meet the elements of the crime charged. *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001).

A person commits a class "D" felony of possession with intent to deliver marijuana by "manufactur[ing], deliver[ing], or possess[ing] with the intent to manufacture or deliver a controlled substance," including "fifty kilograms or less of marijuana" Iowa Code § 124.401(1)(d). "Possession may be actual or constructive." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (footnotes omitted). "Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" *Id.* (quoting *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008)). In determining whether someone had constructive possession, we may consider factors including the "circumstances linking the person to the

controlled substance." *Id.* at 706. "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Iowa Code § 124.101(7).

From the minutes of testimony the court could find these facts. Bell told officers only she and Roby had been at the apartment and that officers would find marijuana inside. Bell told officers that Roby bought the marijuana for himself and for Bell. She also told officers that Roby stayed at her apartment and had slept on the left side of the bed the night before. Roby downplayed his relationship with Bell by saying she was just a friend, yet officers found his clothing in the bedroom closet.

And in the apartment, officers found a tied sandwich baggie with 1.8 grams of marijuana on the ground next to the left side of the bed, a container marked "THC," and another tied sandwich baggie on a television stand with 23.4 grams of marijuana. Also on the television stand were two empty sandwich baggies, and there was a 252-count box of baggies in the closet. Officers also found various items with suspected marijuana residue. Testing later identified all the substances found as marijuana.

Finally, police seized two phones from Roby and downloaded the contents. The State submitted additional minutes of testimony suggesting evidence from the phones would be presented at trial, but the minutes of testimony do not reveal what officers found on the phones.

And with all of that evidence, at the plea hearing, the court asked Roby if he had "unlawfully deliver[ed] or possessed with the intent to deliver marijuana in an amount not more than fifty kilograms," and Roby acknowledged that he had.

Thus, all of this information, taken together, establishes a factual basis for the possession with intent to deliver charge. We find sufficient evidence to establish Roby had constructive possession of the substance found in the apartment, the substance later tested positive as marijuana, and Roby delivered the marijuana to Bell. For that reason, Roby cannot establish that his counsel's performance was deficient in allowing him to plead guilty to the charged offense.

**E. Voluntariness of Pleas.** Roby argues that none of his pleas were knowingly or voluntarily entered. "To enter a guilty plea voluntarily and intelligently means the defendant has a full understanding of the consequences of a plea." *Philo*, 697 N.W.2d at 488 (quoting *State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001)). "The overriding question is whether the defendant, on the whole record, understood the elements of the crime and the nature of the charge against him." *Id.* (quoting *State v. Oberbreckling*, 235 N.W.2d 121, 122 (Iowa 1975)).

Roby argues his plea was not knowing and voluntary because (1) the offense date listed on his written plea to the eluding charge was incorrect; (2) the court did not fully explain the consequences of his guilty plea to third-degree sexual abuse, including the terms of his lifetime special sentence, during the plea colloquy; and (3) he was not fully informed of the consequences of his plea on the pending federal indictment in that his conviction would impact a later federal sentence. We find all of these claims without merit.

1. *Offense date.* In what appears to be a scrivener's error, the plea agreement for eluding listed the correct month and day of the offense but the wrong year. Roby argues this made his plea involuntary. We disagree. There is no indication that Roby did not understand the charge to which he was pleading guilty, and he does not dispute that on October 23, 2017, he was pulled over by police for eluding. The trial information and minutes of testimony contain the correct offense date. We conclude the scrivener's error in the written plea did not make his plea unknowing or involuntary.

2. *Lifetime special sentence.* Roby next argues his plea was involuntary because he did not understand the lifetime special sentence. According to Roby, he believed this special sentence was optional.

In reviewing the record, the parties jointly proposed the sentence at the hearing, including "that [Roby] be specially sentenced to the Director of the Department of Corrections for the remainder of his life under [section] 903B.1." At the plea and sentencing hearing, the court explained the maximum and minimum penalties for sexual abuse in the third degree, including that Roby "would be required to be on parole for the rest of [his] life." Roby told the court he understood and did not request additional time to speak with his attorney. When imposing the sentence the court stated, "You will be required to be on parole for the rest of your life with the Department of Correctional Services."

Roby agreed to the imposition of the lifetime special sentence as part of the plea. Moreover, though short, the court's statements on the lifetime special sentence were clear and accurate. We find Roby's plea was knowing and voluntary related to the lifetime special sentence.

3. *Federal indictment.* During the plea and sentencings hearing, when asked if any charges were pending, Roby's counsel stated that there was a pending federal indictment. The court addressed Roby about the possible indictment as follows:

> [T]his plea agreement that you're entering into is resolving all of your Black Hawk County state charges, the ones that we just talked about. Your attorney has informed me that the federal government, which is different than what we're doing at the state level, may have a charge against you. And you need to understand that by entering these guilty pleas today, that's not going to make that charge go away.

Roby acknowledged that he understood and told the court he did not need time to talk to his attorney about it, even though the court referenced a possibility of a detriment related to the plea and the pending federal case.

At the time of the pleas and sentencings, the federal indictment was "pending" and any impact Roby's convictions would have on a potential federal case was purely speculative. Counsel did not have a duty to speculate about how these criminal convictions may affect Roby if he pled to other pending charges. *See State v. Carney*, 584 N.W.2d 907, 910 (Iowa 1998) (providing that counsel is generally not held to be ineffective for failing to inform the defendant about the consequence of the plea when the consequence is not direct but instead involves a collateral fallout from the plea); *Stevens v. State*, 513 N.W.2d 727, 728 (Iowa 1994) ("The rule is well established that defense counsel does not have a duty to inform a defendant about the collateral consequences of a guilty plea, but commits reversible error if counsel misinforms the defendant as to these consequences."); *see also McCarthy v. United States*, 320 F.3d 1230, 1234 (11th Cir. 2003) (rejecting applicant's claim that he should have been warned that his guilty plea to

state drug charges "could have sentencing consequences if he was later convicted in federal court"; concluding "these potential consequences are clearly collateral, and neither the court nor [plea] counsel were constitutionally required to make him aware of them"). That said, Roby could have reasonably expected that pleading guilty to two felonies and an aggravated misdemeanor would likely impact a sentence he received on any criminal convictions in the future. He still chose to plead guilty. Simply because his convictions would impact future criminal charges does not make the plea involuntary. We reject Roby's arguments on this ground.

     **F. Ineffectiveness and Structural Error.** Finally, Roby argues that his counsel's assistance was ineffective and so deficient it amounted to structural error. The Iowa Supreme Court discusses structural errors:

> We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as were counsel has an actual conflict of interest in jointly representing multiple defendants.

*Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). The court has also recognized structural error where the State froze the defendant's assets, without objection from defense counsel, and, as a consequence, the defendant was deprived his right to personally conduct his defense. *See generally Krogmann v. State*, 914 N.W.2d 293, 321–22 (Iowa 2018).

     We have not found counsel's performance deficient on any of Roby's claims, and for that reason, he has failed to prove ineffectiveness. Roby also has identified no structural errors. We find his claims without merit.

## IV. Disposition.

For all of the above-stated reasons, we affirm Roby's conviction and sentence.

**AFFIRMED.**